**Benjamin Thomas MOORE, Jr.,
Appellant–Defendant,**

v.

**Patricia Joanne LIGGINS,
Appellee–Petitioner.**

**No. 49A05–9512–CV–477.**

Court of Appeals of Indiana.

July 2, 1997.

---

Linda Thompson, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, for Appellee–Petitioner.

## OPINION

SHARPNACK, Chief Judge.

Benjamin Moore, Jr. appeals the trial court's finding that he was in contempt of court for failing to pay child support. He raises several issues for our review, which we restate as:

1) whether the finding of contempt for failure to pay child support is valid;

2) whether the commissioner abused her discretion by failing to recuse herself;

3) whether the procedure used for child support contempt hearings in the Title IV–D court is unconstitutional; and

4) whether there was sufficient evidence to support the trial court's finding of contempt.

We affirm.

The facts most favorable to the judgment follow. Moore and Patricia Liggins were divorced on July 10, 1989, and have two children from the marriage. In 1991, Liggins sought enforcement of Moore's child support obligation from the Marion County Prosecutor's Office. The prosecutor's office initiated contempt proceedings against Moore in the Title IV–D court ("IV–D court") for being in arrears. Moore received a suspended sentence for contempt.

A bench warrant was issued for Moore on a subsequent contempt citation in 1991. In 1992, the trial court entered an income withholding order against Moore. In 1993, the trial court issued a bench warrant for Moore when he failed to appear for an order to show cause. In 1995, another bench warrant was issued to secure Moore's appearance on an order to show cause.

On August 2, 1995, the trial court held a hearing on the order to show cause. Moore requested a jury trial, but the judge pro term denied the motion and continued the matter so that it could be heard by the master commissioner.

The rescheduled hearing took place on September 13, 1995. Among other objections, Moore challenged the authority of the master commissioner and the authority of the prosecutor to represent Liggins through the IV–D program. The commissioner found Moore in contempt for failing to pay the arrearage in child support. The commissioner announced the finding from the bench as follows:

"Respondent has had an opportunity to convince the Court that he's unable to pay, as per the Court has ordered several times his arrears order has just continued to increase, he's paid less than fifty percent of his order for one, two, three, four, five years, last year he paid nothing. Respondent has willfully failed to pay child support and could pay child support, Respondent is in contempt of Court, ninety days, Marion County Jail, twenty-five hundred dollar purge."

Record, pp. 224–225. The commissioner subsequently signed the commitment order. The commitment order contained no indication of approval by the judge of the superior court. Moore was released the next day after paying $2,500. He now appeals the finding of contempt.

### I.

The first issue raised for our review is whether the finding of contempt for failure to pay child support is valid. Moore contends that the commissioner lacked the authority to find Moore in contempt because her appointment was improper and because of the limited advisory role of the commissioner.[1] He also contends that the trial court did not have jurisdiction because Liggins lacked standing to bring the action in the IV–D court and because the prosecutor lacked authority to prosecute the action since Liggins was not a recipient of benefits.[2] We will address each contention in turn.

---

1. Moore also contends that the commissioner lacked authority because she had no proper oath or bond on record. However, Moore fails to develop this argument and to cite to relevant facts and authority. Therefore, Moore waived appellate review of the issue pursuant to Ind.Appellate Rule 8.3(A)(7). *See Berger v. Berger*, 648 N.E.2d 378, 381 (Ind.Ct.App.1995).

2. In addition, Moore presents two other issues. Moore argues that the court lacked jurisdiction because the case was never properly transferred from Marion County Superior Court IV. Moore also contends:

"to the extent that the current process of the State representing a non-indigent Plaintiff in a

## A. *Commissioner's Authority*

 Moore challenges the commissioner's authority on the grounds that her appointment was improper and that her limited advisory role prevented her from finding Moore in contempt.

The authority for a IV–D court to appoint commissioners is set forth in Ind.Code § 12–17–2–19, which provides:

"The judge of a court having jurisdiction over actions arising under Title IV–D of the Social Security Act ... shall, when necessary ... appoint assistants meeting the standards established by the judicial conference of Indiana under subsection (c), including:

(1) court commissioners;

(2) hearing examiners;

(3) masters; and

(4) referees;

to make findings of fact and recommendations for the judge's approval in actions arising under Title IV–D ...."

I.C. § 12–17–2–19. We have previously recognized the authority of commissioners in child support cases. *See, e.g., Shipley v. Shipley,* 649 N.E.2d 1049, 1050 (Ind.Ct.App. 1995).

In addition, the Marion County Superior Court is authorized by statute to employ commissioners who have the authority and powers of magistrates. *See* I.C. § 33–5.1–2–11(e). One of the enumerated powers of a magistrate is the authority to punish contempt. I.C. § 33–4–7–4(6). Consequently, a commissioner also has this authority. I.C. § 33–5.1–2–11(e). In addition, contempt is specifically provided as a statutory remedy for failure to pay child support:

"Notwithstanding any other law, all orders and awards contained in the dissolution decree may be enforced by:

(1) contempt;

(2) assignment of wages or other income;

(3) any other remedies available for the enforcement of a court order...."

I.C. § 31–1–11.5–17(c); *see Pettit v. Pettit,* 626 N.E.2d 444, 446 (Ind.1993).

The commissioner in this case was appointed by the Marion County Superior Court to serve as the master commissioner of the Marion Superior Title IV–D Court. She received the petition, issued the order to show cause signed by the judge, took evidence, made a decision, and found Moore in contempt. These actions fell within the commissioner's statutory authority. *See* I.C. § 33–5.1–2–11(e). Therefore, the master commissioner was duly appointed to hear IV–D cases and had the authority to find Moore in contempt.

## B. *Trial Court's Jurisdiction*

 Moore also contends that the trial court did not have subject matter jurisdiction because Liggins lacked standing to bring the action in the IV–D court and the prosecutor lacked authority to prosecute the action since Liggins was not a recipient of program benefits. We disagree.

The State of Indiana has the authority to provide child support enforcement services to people who do not receive public assistance. In fact, I.C. § 12–17–2–22 requires the State to provide such services:

"All the services provided in sections 16 and 21 of this chapter must be available to individuals other than recipients or applicants for AFDC upon application for the services accompanied by the payment of an application fee set by the Title IV–D agency. Fees other than the application fee must be imposed in accord with federal law governing this program."

civil, debt collection action against another citizen is held to be in compliance with statute, the Court should find that the process violates the equal protection and fundamental fairness requirements of the Due Process Clause of

Fourteenth Amendment and is therefore unconstitutional."
Appellant's brief, p. 11. Moore does not develop the arguments and provides no citations to authority. Therefore, Moore waived appellate re-

I.C. § 12–17–2–22.[3]

The prosecutor's authority to represent people who do not receive program benefits stems from federal law which requires every state to provide these support enforcement services to persons not receiving public benefits if that state wishes to continue to receive federal funds for the Aid to Families with Dependent Children public assistance program. This federal law states in part:

"[T]he child support collection or paternity determination services established under the plan shall be made available to any individual not otherwise eligible for such services upon application filed by such individual with the State...."

42 U.S.C. § 654(6).

Based on this statutory foundation, we find that Liggins was entitled to seek assistance from the IV–D program as an "individual[ ] other than recipients or applicants for AFDC" and that the prosecutor was authorized to pursue relief on her behalf. I.C. § 12–17–2–22. As such, the trial court had jurisdiction to hear the case.

## II.

The second issue Moore raises for our review is whether the commissioner abused her discretion for failing to recuse herself.[4] Moore maintains that "the Commissioner's refusal to recuse ... denied Mr. Moore any semblance of due process in the course of the summary, pro forma proceedings." Appellant's brief, p. 17.

■ First, Moore contends that the commissioner abused her discretion by not recusing herself upon defense counsel's motion. On the same day as the hearing, Moore filed an "Objection to Authority of Hearing Officer and Jurisdiction and Authority of the Court and Motion for Change of Venue from Court

and Judge." The commissioner denied the motion during the hearing.

To obtain a change of judge after expiration of the period allotted for an automatic change of judge under Ind.Trial Rule 76, a party must comply with the following procedure:

"[I]f the moving party first obtains knowledge of the grounds for change of venue from the county or judge after the time above limited, he may file said application, which must be verified personally by the party himself, specifically alleging when the cause was first discovered, how discovered, the facts showing the grounds for a change, and why such cause could not have been discovered before by the exercise of due diligence...."

T.R. 76(C)(6). The ruling of the court on a motion for change of judge may be reviewed only for abuse of discretion. T.R. 76(C)(6).

Although Moore filed a written motion entitled in part "Change of Court and Judge," the motion failed to meet the criteria set forth in T.R. 76(C)(6). The motion was not verified by Moore and consisted only of a general challenge to the authority of the court and the commissioner. In fact, the motion lacked any argument specifically addressing the change of judge portion of the motion. The motion also lacked an explanation as to why the challenge was not raised before the day of the hearing as required by the rule. The motion did not state when the cause for the motion was discovered, how it was discovered, or why it could not have been previously discovered. As a result, the motion filed by Moore failed to comply with the requirements of T.R. 76, and the commissioner properly denied it. *See* T.R. 76(C)(6).

■ Next, Moore contends that the commissioner abused her discretion by not recus-

view of these issues pursuant to App.R. 8.3(A)(7). *See Berger,* 648 N.E.2d at 381.

**3.** The administrative code also contains provisions relating to child support enforcement services for people who do not receive public assistance. *See* 470 IAC 2–5–1 (defining "non–AFDC participant"); 470 IAC 2–5–2 (establishing eligibility and fees for child support enforcement services); 470 IAC 2–5–3 (concerning recovery of costs in non-AFDC child support cases).

**4.** Moore also contends that the commissioner abused her discretion by failing to grant a continuance. However, Moore failed to develop a cogent argument with supporting authority in violation of App.R. 8.3(A)(7). Therefore, he waived review of this issue. *See Berger,* 648 N.E.2d at 381.

ing herself *sua sponte.* Moore contends that the commissioner was openly biased during the hearing and had ex parte communications. Specifically, he contends:

"On arrival at the outer room to the Title IVD courtroom, it was obvious that extra-judicial communication of the Commissioner's predetermination to incarcerate Mr. Moore had already been communicated to both the media and the Marion County Sheriff's department ... The Commissioner denied or overruled every motion made by defense during the course of the hearing except one, and made no bones about her open bias against Mr. Moore by her demeanor throughout the hearing, to the point that the fifty some people in the gallery were laughing whenever the judge spoke towards the end of the hearing ... it was very plain for everyone in the room to see that the entire proceeding had been, in a word, rigged ... the Commissioner made no effort to disclose any conversation to Defense counsel whatsoever to explain the deputies or the lights and TV reporter and cameraman, perched like vultures in obvious anticipation of the pre-planned incarceration of Mr. Moore. Instead, the Commissioner made light of it, as the six deputies in uniform took turns peering into the courtroom or pressing their noses against the door window ... The commissioner also met *ex parte* with the deputy prosecutor during the break and failed to disclose what conversation occurred at that time, too ... When undersigned counsel contacted the Court [to obtain the record]. ... the Commissioner herself got on the phone and heckled counsel, and in a clearly sarcastic, mean cackle, told counsel to 'Tell Mr. Moore to come get the record'...."

Appellant's brief, pp. 12–16.

■ A judge is presumed by law to be unbiased and unprejudiced. *Clemens v. State,* 610 N.E.2d 236, 244 (Ind.1993), *reh'g denied.* To overcome this presumption, the party seeking to disqualify a judge must establish actual personal bias. *Smith v. State,* 535 N.E.2d 1155, 1157 (Ind.1989); *Dahlin v. Amoco Oil Corp.,* 567 N.E.2d 806, 813 (Ind.Ct.App.1991), *trans. denied.* A mere allegation of bias, without a specific

factual showing in support, is insufficient to require disqualification. *Blair v. Emmert,* 495 N.E.2d 769, 772 (Ind.Ct.App.1986), *reh'g denied ; trans. denied.* Adverse rulings are insufficient to show bias *per se. Taylor v. State,* 587 N.E.2d 1293, 1303 (Ind.1992), *reh'g denied.* Upon review of a judge's failure to recuse, we will assume that the judge would have complied with the obligation to withdraw had there been any reasonable question concerning impartiality, unless we discern circumstances which support a contrary conclusion. *Dahlin,* 567 N.E.2d at 813.

We find that Moore failed to establish the commissioner was biased against him at the hearing. In fact, Moore's allegations are wholly unsubstantiated by the record. Moore contends that the commissioner had "extra-judicial" communications with the media and the Sheriff's department and that the commissioner had *ex parte* communications with the deputy prosecutor during the hearing. He also contends that the proceedings were "rigged." However, Moore provides no specific factual basis to substantiate these serious allegations. As we have already stated, a mere allegation of bias, without a specific factual showing in support, is insufficient to require disqualification. *See Blair,* 495 N.E.2d at 772. Therefore, Moore failed to establish that the commissioner was biased on these grounds.

Moore also maintains that the commissioner was biased because she overruled most of his objections during the hearing. However, we have already noted that adverse rulings are insufficient to show bias *per se. Taylor,* 587 N.E.2d at 1303. Moore raised the same objections multiple times during the hearing even after they had been denied. Furthermore, our review of the record reveals that the commissioner considered the objections and listened to arguments by both parties before ruling on them. Therefore, Moore failed to demonstrate bias through the commissioner's rulings on his objections.

■ In sum, Moore failed to support his allegations of bias with any factual basis. In addition, nothing in the record supports the contention that the master commissioner acted from bias. Although the commissioner appears to have become somewhat impatient

with defense counsel by the end of the hearing, a mere showing of a strained relationship between the judge and a party's attorney is not a ground for disqualification of the judge. *See Briggs v. Clinton County Bank and Trust Co.*, 452 N.E.2d 989, 1007 (Ind.Ct. App.1983). Moore failed to establish an actual personal bias which would require the recusal of the commissioner. *See id.; Dahlin*, 567 N.E.2d at 813. Therefore, the master commissioner did not abuse her discretion by not recusing herself *sua sponte.*

### III.

The third issue raised for our review is whether the procedure used for child support contempt hearings in the IV–D court is unconstitutional. In his brief, Moore postulates:

> "Does the procedure being used for child support contempt hearings in the Title IVD Court violate the Constitution of the United States or the State of Indiana, specifically Ind. Const. Art. 7, § 1, Ind. Const. Art. 1, § 11 through 17, 19 or 20; 21 and 22, by failing to accord a jury trial, by failing to observe the rights of citizens to be free of unreasonable seizure of their persons and property and not to be put to involuntary servitude, and by failing to recognize the privilege of the debtor to enjoy the necessary comforts of life and to exempt a reasonable amount of property from seizure and by failing to follow the law, as set forth in I.C. § 34–4–7–3, 34–4–8–1, 34–4–1–21, 31–2–11–8, 31–2–11–10, 33–6–1–10, 34–4–7–8, 31–2–7–2, thereby creating fundamental (and therefore reversible) error?"

Appellant's brief, p. 17.[5]

The focus of Moore's argument is that enforcing child support orders through the use of contempt violates Art. 1, § 22 of the Indiana Constitution, which states:

> "The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure

or sale for the payment of any debt or liability hereafter contracted; and there shall be no imprisonment for debt, except in the case of fraud."

IND. CONST. art. 1, § 22. Moore claims that this constitutional provision prohibits the imprisonment of an individual who fails to pay child support.

Our supreme court has already rejected this issue, recognizing that child support obligations have long been enforceable by contempt in Indiana. *Pettit*, 626 N.E.2d at 445. In *Pettit*, the court stated that child support obligations arise out of a natural duty of the parent and not from a debt of the obligor. *Id.* As a result, the supreme court found that "the proscription against imprisonment for debt in Art. I, Sec. 22, of our constitution does not prevent the use of contempt to enforce child support obligations." *Id.* at 445–446 (footnotes omitted). We have also held that child support obligations do not constitute a debt and, therefore, that the constitutional proscription against imprisonment is inapplicable to such obligations. *See Davis v. State*, 481 N.E.2d 434, 437 (Ind.Ct. App.1985), *reh'g denied, trans. denied.* Therefore, Moore's challenge to the contempt finding on the basis that it violates Art. I, § 22 is without merit.

### IV.

The final issue for our review is whether there was sufficient evidence to support the trial court's finding of contempt. Contempt is a remedy available for failure to pay support only upon a finding that a delinquency in support was the result of a willful failure by the parent to comply with the support order and that the parent had the financial ability to comply. *Pettit*, 626 N.E.2d at 447. Once the person seeking contempt establishes a support obligation and a delinquency in the obligation, then the burden shifts to the person charged with contempt to prove that the failure to meet the support obligation was not willful or oth-

---

5. Although Moore contends that several constitutional and statutory provisions are unconstitutional, he fails to develop a cogent argument with authority to support any of his claims except his challenge to Art. I, § 22 of the Indiana Constitution. Accordingly, Moore waived appellate review of the other issues pursuant to App.R. 8.3(A)(7). *See Berger*, 648 N.E.2d at 381.

erwise excused. *Kirchoff v. Kirchoff*, 619 N.E.2d 592, 596 (Ind.Ct.App.1993).

■ We will reverse a trial court's contempt order to compel a parent to pay child support only when it is contrary to law. *Holiday v. Holiday*, 644 N.E.2d 880, 882 (Ind.Ct.App.1994). In making such a determination, we will consider only the evidence in the record most favorable to the trial court's judgment without reweighing the evidence or judging the credibility of witnesses. *Id.*

Moore points to evidence in the record in support of his argument that the trial court erred by holding him in contempt. For example, he challenges the record of payments presented to establish the amount of arrearage. However, Moore's argument amounts to a request to reweigh the evidence, which we cannot do. *See id.* Instead, we will consider only the evidence most favorable to the commissioner's decision to determine whether the finding of contempt was proper.

■ The record reveals that a certified copy of the clerk's record was entered into evidence to establish that Moore was in arrears in excess of $14,000. There was no dispute that Moore was aware of the order. Liggins demonstrated that Moore made no child support payments for more than one year and paid only $1,570 over a three-year period. Liggins testified that Moore was employed. This testimony was corroborated by a newspaper article admitted into evidence over his objection which stated that he had worked as a private investigator in the last few years.

Moore contends that this article was hearsay upon hearsay and should not have been admitted. Hearsay is a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). If the challenged evidence is hearsay and does not fall within one of the exceptions to the rule, it is inadmissible. *King v. State*, 560 N.E.2d 491, 495 (Ind.1990), *reh'g denied.* Newspaper articles are, by their very nature, hearsay and for that reason are seldom proper evidence to prove any fact except the bare fact of their publication.

*Feliciano v. State*, 467 N.E.2d 748, 749 (Ind. 1984). Therefore, the trial court erred when it admitted the newspaper article into evidence.

■ However, we hold that the error was harmless. Here, Moore's own testimony indicated that he had been employed within the last two years. Further, during his testimony, Moore invoked his Fifth Amendment right not to answer additional questions. From Moore's refusal to testify, the court could properly have drawn an adverse inference regarding his financial ability to comply with the support order. *See Gash v. Kohm*, 476 N.E.2d 910, 913 (Ind.Ct.App.1985) (holding that the privilege against self-incrimination does not prohibit the trier of fact in a civil case from drawing adverse inferences from a witness' refusal to testify), *reh'g denied, trans. denied.* Due to the independent evidence of Moore's ability to pay, the information contained in the newspaper article was merely cumulative, and, therefore, its introduction was harmless.

The evidence is sufficient to support a finding that Moore's failure to pay support was willful and that Moore had the financial ability to comply. *See Pettit*, 626 N.E.2d at 447. Once Liggins met her burden, the burden then shifted to Moore to demonstrate that his failure to meet the obligation was not willful or was otherwise excused. *See Kirchoff*, 619 N.E.2d at 596. Moore merely denied that he had the ability to pay, without presenting any evidence in support of his claim. Therefore, Moore failed to satisfy his burden, and the trial court's decision was not clearly erroneous.

For the foregoing reasons, the decision of the trial court is affirmed in all respects.

We feel obliged to point out that the appellant's brief fails to comply with several appellate rules. We will address only a few as examples of the general disrespect for the integrity of the rules and of this court exhibited by this brief.

■ The "statement of the case" section of the brief fails to include any of the items required by App.R. 8.3(4), which states:

"The statement shall indicate briefly the nature of the case, the course of proceed-

ings relevant to the issues presented for review, and the disposition of the case and issues in the court below, including a verbatim statement of the judgment. . . ."

App.R. 8.3(4). This section of Moore's brief does not set forth the relevant procedure for this case, including the judgment of the trial court. In fact, the section even fails to identify the specific order being challenged on appeal. Rather, the section merely discusses a theory of conspiracy between the police, the prosecutor's office, and the commissioner concerning an unrelated case. This theory is never developed or factually substantiated with respect to this case in the brief and is, therefore, unrelated to the issues before us in this appeal.

Next, the "statement of the facts" section of the brief fails to comply with App.R. 8.3(A)(5). The section contains argumentative information concerning an "illegal, pre-staged ambush" at the jail by police. Appellant's brief, p. 6. The description is not proper information for the objective fact section and is never supported with reference to evidence in the record. In addition, the section fails to include all of the relevant facts which support the trial court's judgment and which are necessary for our review of the issues on appeal.

The body of Moore's brief also contains unnecessary inflammatory analogies which are wholly inappropriate. For instance, the brief makes the unsupported claim that the prosecutor's office is financially profiting from operating the IV–D program and states:

> "This is quite a gravy train the prosecutor's office has set up at the expense of the equal privileges and protections of the Defendants who are supposed to enjoy the same Constitutional protections, rights, privileges and immunities, as free white citizens, according to the Fourteenth Amendment. Marion County's implementation of the law, however, has given state sanction to the creation of a new class of slave owners and profitees, and a corresponding class of slaves: so-called 'dead-beat dads.'"

Appellant's brief, pp. 10–11. This allegation is neither further developed nor substantiat-

ed. In addition, in the brief's discussion of the public good, it states:

> "One has only to click the TV or pick up any magazine to see colorful, bold headlines proclaiming 'Woman wants Dead–Beat Dad Toasted over Open Flames, Broiled, Folded, Spindled and Mutilated!' calling for someone's head on a platter . . . if one disagrees, it surely must be because the person is a child-hating, knuckle dragging cretin who has no sense of social responsibility (and probably has a half-dozen starving illegitimate offspring of his own in a shack somewhere, to boot)."

Appellant's brief, pp. 19–20. The discussion goes on to compare a court's enforcement of a child support order to the Nazis' extermination of millions of "Jews, Hungarians, gypsies, homosexuals, and socialists in Germany for the 'public good.'" Appellant's brief, p. 20. Whatever potential value such analogies might have had is overwhelmed by their inflammatory phrasing and their lack of support and development. As a result, they are inappropriate material for an appellate brief.

The record also contains inappropriate comments. The notations throughout the transcript fail to comply with 7.2(A)(3)(a), which requires notations to be made on the margin of each page of the transcript indicating the name of each witness and whether the examination is direct, cross, or redirect. Several notations throughout the transcript are subjective comments about the proceedings instead of a simple identification of the witness and the type of examination. For example, the transcript contains the following notations: "Police Presence and undue notice prior to hearing beginning"; "Court Attempts to prevent Record being made of police presence"; "police presence and undue attention to Defendant/Appellant"; "Plaintiff counsel Mistates [sic] Debt"; and "Defective Rights Advisement by Court". Record, pp. 110, 111, 112, 135, 136. These comments do not comply with the spirit of the rule requiring notations in the margins of the transcript.

Such a brief reflects a lack of professional responsibility on the part of counsel and does

little to serve the interest of the client to whom counsel is responsible in this appeal.

Affirmed.

NAJAM and DARDEN, JJ., concur.