**DAN CRISTIANI EXCAVATING CO., INC., Appellant–Defendant,**

**v.**

**Jeremy MONEY and Kerri Money, Appellees–Plaintiffs.**

No. 10A05–1002–CT–114.

Court of Appeals of Indiana.

Jan. 26, 2011.

Rodney L. Scott, Tricia Kirkby Hofmann, Waters, Tyler, Hofmann & Scott, LLC, New Albany, IN, Attorneys for Appellant.

David W. Stone, IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellees.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issues

Following a jury trial, Dan Cristiani Excavating Co., Inc. ("Cristiani") appeals a verdict in favor of Jeremy Money ("Money") and Kerri Money for injuries sustained by Money in a bulldozer accident. On appeal Cristiani raises four issues, which we restate as: 1) whether the trial court erred in denying Cristiani's motion to try separately the issues of liability and damages; 2) whether the trial court erred in denying Cristiani's request for the jury to view the bulldozer involved in the accident or in the alternative, to admit into evidence photographs of the bulldozer involved in the accident; 3) whether the trial court erred in allowing Money's life care planner to testify regarding future medical treatment; and 4) whether the trial court's adverse rulings constitute judicial bias.

We conclude the trial court did not abuse its discretion in denying bifurcation of the trial, or in declining to allow the jury to view actual or photographic evidence of the bulldozer involved. We conclude further that Cristiani waived the issue of whether Money's life care planner was qualified to testify as an expert, and that the weight to be given her testimony was properly conceded to the jury. Finally, Cristiani failed to establish actual personal bias by the trial judge, and accordingly, we affirm.

### Facts and Procedural History

In 2005 Money was employed by Weber Concrete. Throughout his ten years as an employee, he did various tasks including those of a grade checker. Checking grade involves measuring the amount of leveling (grading) of rock, gravel, or dirt that is needed in a given area prior to paving it and conveying that information to a bulldozer operator who works in tandem with the grade checker. The grade checker uses a level and ruler, and bases his assessments on a string line that was previously measured and set. To complete the task, the grade checker and bulldozer operator continually communicate regarding both what is needed to level the area (i.e., more or less earth, and where) and safety (to prevent the bulldozer from running over the grade checker). The bulldozer operator often takes several passes forward and backward to level the area, meanwhile the grade checker is to remain out of the way.

Money had checked grade numerous times with different bulldozer operators. He received no formal training or instruction on how to do so safely, but followed his coworkers' practices and after ten years of experience felt comfortable with the task. He testified that he usually discussed hand signals with the operators prior to beginning because each had their own method of how to complete the task.

In October 2005, Money began a job checking grade with Kenneth Reed, an employee of Cristiani, as the bulldozer op-

erator. Although timing of Reed's passes and communication between the two was an issue in determining liability at trial, none of this is a primary issue on appeal. Essentially, Money told Reed the area they were working on was a few inches too high, Reed drove the bulldozer forward and then backward, and then Reed took a second pass. At some point on Reed's second or third pass, Money stepped behind the bulldozer to check their progress and Reed reversed the bulldozer over Money's foot. Money shouted, Reed stopped, and Money required emergency medical care. Money suffered a dislocated ankle and multiple fractures in his leg and left foot, and subsequently underwent several surgeries including amputation of four toes on his left foot.

Money and his wife brought suit against Cristiani and a jury returned a verdict in their favor, finding that Cristiani was 67% at fault, Money was 33% at fault, and Weber Concrete 0% at fault.[1] After determining total damages and apportioning fault, the jury found Cristiani responsible for damages of $1,340,000 to Money, and $228,917 to Kerri Money. The trial court entered a judgment on the verdict. Cristiani now appeals. Additional facts will be supplied as necessary.

*Discussion and Decision*

### I. Bifurcation of the Trial

#### A. Standard of Review

Cristiani first argues the trial court erred in denying its motion to bifurcate the trial and separately try the issues of liability and damages. Indiana Trial Rule 42 provides the trial court with authority to grant such motion. "The trial court is granted a wide degree of latitude in exercising its proper discretion in granting a motion for separation of trials, and we will reverse the denial only for an abuse of that

discretion." *Elkhart Cmty. Schs. v. Yoder*, 696 N.E.2d 409, 414 (Ind.Ct.App.1998).

#### B. Trying Separately the Issues of Liability and Damages

Indiana Trial Rule 42(B) provides:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury.

Following are the well-settled guiding principles for a trial court's decision of whether to bifurcate a trial and try separately the issues of liability and damages:

The avoidance of prejudice is more than sufficient reason for a separate trial. However, a separate trial should not be granted solely upon the movant's speculation that it might be prejudiced by certain testimony. If an issue can be conveniently and expeditiously resolved, a separate trial may be ordered in the interest of judicial economy. If the proof of damages will be complicated and costly the issue of liability could first be separately tried. This was the specific purpose in adding subdivision (C) to T.R. 42 [ (regarding submission of claims or issues to juries in stages) ]. However, ... while the separation of trials can result in judicial economy when the defendant prevails on the issue of liability (by obviating the need for a trial on damages), the defendant must first convince the court that it has a persuasive argument on the question of

1. Weber Concrete was a non-party in the litigation.

liability in order to justify the potential risk and expense of two trials.

*Frito–Lay, Inc. v. Cloud,* 569 N.E.2d 983, 990 (Ind.Ct.App.1991) (citations omitted).

Cristiani argues it had a persuasive argument on the question of liability for a variety of reasons, including: 1) Money was experienced and knowledgeable, and was still negligent; 2) the facts reveal Money's fault; 3) Money told the bulldozer driver and others that it was not the driver's fault; 4) Money's liability expert testified both that Money did not abide by industry standards for safety and that it was Money's obligation to protect himself. Cristiani also points out that comparative fault would have precluded Money's recovery completely if the jury found him slightly more at fault than it eventually did after deliberations.

■ Although this might have been a persuasive argument on the question of liability, we conclude that in any event, Cristiani provides insufficient evidence that the jury was influenced by evidence of damages when considering liability. In other words, Cristiani fails to show sufficient evidence of prejudice, and therefore we cannot conclude the trial court abused its discretion in declining bifurcation.

Cristiani first contrasts *Shafer & Freeman Lakes Envtl. Conserv. Corp. v. Stichnoth,* 877 N.E.2d 475 (Ind.Ct.App.2007), *trans. denied,* in which we stated the jury's finding that the plaintiff was fifty percent liable "is a strong indicator" the jury did not significantly sympathize with the plaintiff. *Id.* at 483. Cristiani attempts to contrast *Shafer* with this case, in which the jury found Money "only" thirty-three percent liable, to argue that the jury must have been sympathetic to Money and therefore its finding of his liability was diminished. We disagree. Jury verdicts based on different facts are incomparable as to their finding of liability because myriad factors determine a jury's decision.

Further, the jury's finding of Money's thirty-three percent liability for his own severe injuries is not persuasive evidence of the jury's sympathy.

Cristiani also contends hindsight bias prejudiced the jury because it knew how injured he had become before deliberating and apportioning liability. Although we do not disagree with hindsight bias as a psychological reality, we refuse to presume hindsight bias prejudiced the jury in this case because Cristiani discusses it as an abstract theory but does not show evidence of its influence or degree thereof in this case. While admittedly difficult to muster, without evidence of influence we must presume absence of such and cannot reverse a trial court decision based on appellate discussion of an abstract non-legal theory.

Cristiani next argues that because Money suffered substantial permanent damages and his wife's emotional testimony likely evoked sympathy, it was sufficiently prejudiced by an unbifurcated trial. We disagree that these show sufficient prejudice. Unfortunately, in many personal injury cases the plaintiff has suffered substantial permanent damages, and accordingly, loved ones offer emotional testimony.

Cristiani compares this case to *Frito–Lay,* in which we reviewed a trial court's denial of a motion to bifurcate. After recounting the governing law and the facts of that case, we stated "[w]e cannot imagine a case more appropriate for bifurcation than the case at bar." *Frito–Lay,* 569 N.E.2d at 991. We then noted: "Had we not been required to reverse this case [based on other grounds], we would be extremely reluctant to invade the province of the trial court's discretion on the issue of bifurcation." *Id.* We read this to mean that had we not already concluded the case must be reversed and remanded on other grounds

for a redetermination of both liability and damages, we would not have reversed solely for failure to bifurcate. This opinion accurately conveys the reluctance with which we reverse based on the failure to bifurcate, even if a high level of prejudice were shown, and implicitly even greater reluctance if prejudice is not as high.

Trial rules and public policy limit the number of trials as much as possible. *See Farm Bureau Mut. Ins. Co. v. Dercach,* 450 N.E.2d 537, 540 (Ind.Ct.App.1983). Cristiani has failed to demonstrate prejudice that would require reversal, and we therefore decline to conclude the trial court abused its discretion in denying bifurcation.

## II. Jury View and Photographs of the Bulldozer

Cristiani next argues the trial court abused its discretion by refusing a jury view of the bulldozer, or in the alternative, refusing to admit into evidence photographs of the bulldozer involved in the accident. It claims a jury view of the bulldozer would have been materially helpful to the jury's consideration and determination of the issues.

Our supreme court has explained that a jury view is not a substantive right, nor is it essential to a fair trial, and the decision of whether to permit a jury view is completely within the trial court's discretion. *Carroll v. State,* 438 N.E.2d 745, 749 (Ind. 1982). Further, "[a] jury's view of a location is not intended as evidence. It is intended simply to aid the jury in understanding the evidence. Thus, a trial court does not abuse its discretion if the viewing would not be materially helpful to the jury or where photographs or other evidence adequately present the situation." *Id.*

Cristiani explains the circumstances that led to the trial court's denial of a jury view. In short, prior to trial Cristiani allowed Money's attorney to photograph, video, and hear a particular bulldozer in action. Cristiani, Money, and their attorneys did not realize until trial that this pretrial visit was of bulldozer D38, not D35, which was the bulldozer involved in the accident. During trial, the trial court sustained Money's objection to a jury view because Cristiani did not make bulldozer D35 available to Money's attorney prior to trial.

■ Cristiani has not demonstrated how a jury view would have been materially helpful to the jury. First, as for viewing the bulldozer, Cristiani acknowledges that photographs of D38 were admitted into evidence. Cristiani also argues, as he did at trial, D35 and D38 are identical in every respect except their labels, "D35" and "D38." Because the jury was afforded an opportunity to view a photograph of a bulldozer that Cristiani argues is identical, these photographs adequately presented the situation, at least as to D35's appearance.

Second, Cristiani argues a jury view would have been materially helpful to the jury because it would have learned how the bulldozer operates. We disagree that a jury view would have been *materially* helpful because the function or malfunction of the bulldozer is not in issue. The forward and backward movement of the bulldozer in the moments leading up to the accident is not a complicated concept for a jury to understand. The bulldozer was moving forward and then moved backward and ran over Money's foot. To the extent a jury view would have displayed the speed that the bulldozer could have been moving or how well Money or the operator could view the other, we agree this might have been important evidence. However, a jury view is not to constitute evidence, *Carroll,* 438 N.E.2d at 749, and this information could have been and likely was conveyed through witness testimony. Indeed, Reed testified on this subject.

Therefore we conclude how the bulldozer operates was adequately presented through other evidence and even if it were not, the trial court was not required to allow a jury view that would constitute evidence.

Third, Cristiani might argue the jury view would have been materially helpful to the jury's understanding of how loud or quiet the bulldozer alarm sounds when it reverses. Cristiani contends several witnesses testified it is difficult to explain how the alarm sounds. But, as Money points out, these witnesses then proceeded to do just that. Dan Cristiani testified the alarm is "loud and screechy," "[i]t stays on as long as you have it in reverse," and "it keeps repeating and just keeps beeping until you put it in forward." Transcript at 536–37. Cristiani's expert compared the sound to other backup alarms, stating "you've all heard [a] back up alarm on something," "it's a loud beep," "[g]enerally, it's kind of a[n] ausilating [sic] beep, beep, beep sort of thing." Id. at 605. Further, how the alarm sounds or its volume was not a substantial issue at trial. In fact, Cristiani does not argue the jury's hearing the reverse alarm would have been materially helpful. Accordingly, we conclude witnesses' testimony was sufficient to convey how the alarm sounds, and in any event, hearing it would not have been *materially* helpful because it was not a material issue. Therefore, in no regard would a jury view have been materially helpful in a permissible way, and the trial court has not abused its discretion in denying a jury view.

Next, as to exclusion of photographs of bulldozer D35, we again conclude the photographs of bulldozer D38, which Cristiani argues was identical to D35, constitute other evidence that adequately present the situation. To the extent Cristiani argues photographs of D35 were necessary at trial because Money may have confused the jury by pointing out the different numbers,

we again point out that the aesthetics or design of the bulldozer was not in issue. Therefore, any confusion as to whether the bulldozer involved looked like D38, which the jury had photographs of, would be insignificant and a jury view that might bring clarity would not have been materially helpful.

■ Further, Cristiani fails to demonstrate the trial court's exclusion of the photographs and denial of the jury view led to prejudice. Any appeal of a trial court decision seeking reversal must show prejudice to the appellant. *Neese v. Kelley*, 705 N.E.2d 1047, 1050 (Ind.Ct.App. 1999); *In re Estate of Holt*, 870 N.E.2d 511, 515 (Ind.Ct.App.2007) ("Erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties ...."), *trans. denied;* Trial Rule 61 ("No error in ... the exclusion of evidence ... is ground for ... vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). Because we conclude that neither a jury view nor additional photographs would have been materially helpful to the jury and that other evidence sufficiently presented the situation, these trial court rulings did not affect a substantial right of Cristiani and are not inconsistent with substantial justice.

In sum, the trial court did not abuse its discretion in denying a jury view or admission into evidence of photographs of bulldozer D35 because neither would have been materially helpful, other evidence was sufficient to present the situation, and Cristiani did not demonstrate prejudice.

### III. Unqualified Expert

Cristiani next argues the trial court erred in permitting Laura Lampton, a registered nurse and certified nurse life care planner, to testify regarding a life care plan she prepared for Money. To prepare Money's life care plan, which is a list of anticipated future health and medical care needs and expenses throughout the patient's remaining life expectancy, Lampton reviewed Money's medical records and rehabilitation records, the depositions of Drs. Seligson and Brokaw, and spoke with Money and Dr. Kenneth Mook, Money's rehabilitation specialist. Cristiani argues Lampton's testimony served as an improper conduit for statements by Dr. Mook regarding Money's future treatment, which was improper because Lampton is not qualified to make such statements, they are hearsay statements, and Dr. Mook was not made available for cross examination.

■ Whether to admit expert testimony is within the trial court's discretion, and we will reverse only when there is an abuse of such discretion, that is, only when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Faulkner v. Markkay of Indiana, Inc.*, 663 N.E.2d 798, 800 (Ind.Ct. App.1996), *trans. denied.*

■ First, we must review if Cristiani has waived this argument on appeal. Cristiani's motion in limine to preclude Lampton's testimony raised in advance the issue of whether Lampton would testify to hearsay statements by other doctors, which the trial court denied. However, a ruling on a motion in limine is independent from the admission of evidence at trial. *Emerson v. State*, 524 N.E.2d 314, 315 (Ind.1988) ("A denial of a motion in limine is not a final ruling on the admission of evidence."); *see Perez v. Bakel*, 862 N.E.2d 289, 295 (Ind. Ct.App.2007) ("[I]t is well-settled that in order to preserve error in the denial of a pretrial motion in limine, the appealing party must object to the admission of the evidence at the time it is offered.").

■ During Lampton's testimony, Cristiani objected prior to Lampton responding to the following question: "did you speak with [Dr. Mook] about what Jeremy's needs would be?" Tr. at 363. Cristiani objected as this question called for hearsay and the trial court sustained the objection to the extent an answer would divulge what Dr. Mook said, but overruled it to the extent it would disclose whether the discussion occurred. This did not preserve the issue of whether Lampton could testify regarding her expertise as a life care planner or even regarding what Dr. Mook said, because the trial court ruled in Cristiani's favor. Indeed, Lampton did not then testify what Dr. Mook said in that conversation. Cristiani also objected to admission into evidence of Lampton's life care plan for Money. This does not preserve for appeal the issue of whether Lampton's *testimony* was improper because it was an objection to admission of a document into evidence. *See* Tr. 373–34 (objection to admission of life care plan into evidence); *cf.* Appellant's Corrected Br. at 22 ("THE TRIAL COURT ERRED IN ADMITTING THE <u>TESTIMONY</u> OF LIFE CARE PLANNER LAMPTON") (emphasis added). Therefore, by not making a specific objection at trial to Lampton's qualification as an expert, Cristiani has waived for appeal the issue of whether Lampton may testify as an expert in the area of life care planning.

The trial court permitted Lampton to testify as an expert, which is governed by Indiana Evidence Rule 702. "Generally, expert testimony in the form of opinion or otherwise is admissible if the expert's scientific, technical, or other specialized knowledge assists the trier of fact in understanding the evidence or in determining a fact in issue." *Cutter v. State*, 725

N.E.2d 401, 406 (Ind.2000); Evid. R. 702(a). Such testimony is admissible if the trial court "is satisfied that the scientific principles upon which the expert testimony rests are reliable." Evid. R. 702(b).

Here, the trial court was satisfied Lampton's reliance on physicians' recommendations in preparing a life care plan for Money is sufficiently reliable. No one has argued Lampton was qualified as a physician or otherwise to determine or hypothesize what Money's future medical needs would be. Lampton clarified for the jury that she was not "trying to testify about what [she] think[s] [Money]'s medical needs will be in the future," and that physicians alone decide what his future needs or treatments will be. Tr. at 365. Similarly, Cristiani does not contend on appeal that Lampton was not qualified as a life care planner. *See* Appellant's Corrected Br. at 23 ("While Lampton, as a life care planner, arguably may rely on such hearsay in formulating a life care plan, such does not make her competent to understand it or testify about it in Court.... Laura Lampton may be a qualified life care planner, but she lacks 'sufficient expertise' to evaluate the accuracy of what Dr. Mook recommended....").

Cristiani does seem to argue there might be a difference in understanding as to what Lampton's role as a life care planner was, and to the extent it includes determination of Money's medical needs, that she was not qualified and was erroneously permitted to testify to such. We disagree with Cristiani's characterization of Lampton's testimony. The trial court ruling and Lampton's testimony make clear that Lampton's expertise was in compiling the reports and opinions of physicians to convey estimates and future projections based on facts and opinions she received from Money's doctors and her research and experience with medical costs. Lampton's expertise was in esti-

mating the costs of the treatments and procedures that the doctors told her about, described in their reports, or disclosed in their depositions. She did not attempt to craft a medical opinion, and the trial record is clear in this regard.

Consequently, we conclude that her testimony as limited to her expertise was not improper. Further, we have concluded that once admissibility of the expert's opinion is established,

> the strengths and weaknesses of the expert's opinion may be questioned against the facts, its conclusiveness or lack thereof may be explored, and any lack of certitude may be fully revealed to the finder of fact. The finder of fact is entitled to weigh and determine the credibility to be accorded the expert's opinion based on the evidence presented, including the extent of the witness's experience and expertise, the reliability of the analytical methods employed, and the degree of certitude with which the opinion is cast.

*Brooks v. Friedman,* 769 N.E.2d 696, 702 (Ind.Ct.App.2002), *trans. denied.*

Lampton did not testify why any of the medical treatments were recommended. To the extent Cristiani intended to clarify Lampton's limited expertise, it could have cross examined her more pointedly. For example, Cristiani could have asked the following questions: in your expertise, do you know why such treatment is necessary? How do you know that? How necessary is it? Limited by her expertise, her answer to all of these questions would have been, "I do not know." The weight of her opinion, thus limited, would have been an issue for the trier of fact.

The above discussion aside, Cristiani appears to focus its appellate argument on Lampton's testimony regarding Dr. Mook's recommendations and concern that Dr. Mook was not made available for cross

examination. Cristiani points out that "[m]uch of Lampton's testimony is based on representations made to her by Dr. Mook.... Lampton testified that she spoke to Dr. Mook about what Money's future medical needs were .... [and] [s]he ultimately concluded [Money] would need to see Dr. Mook every two years, as Dr. Mook recommended." Appellant's Corrected Br. at 23. Cristiani's failure to depose or call Dr. Mook for cross examination is Cristiani's fault and, without an explicit argument that the trial court interfered in some way, cannot be the basis for an appellate argument the trial court abused its discretion in admitting other evidence.

Similarly, Cristiani refers us to *Cook v. Whitsell–Sherman*, 796 N.E.2d 271 (Ind. 2003), in which our supreme court held that letters from health care providers regarding future medical expenses constitute opinion evidence that would require availability for cross examination. However, because the failure to cross examine a witness does not reflect upon the trial court absent an explicit argument that the trial court interfered in some way, we decline to reverse on this ground.

■ Further, because Lampton was testifying as an expert life care planner, her reliance on the otherwise inadmissible hearsay of Dr. Mook's recommendations is permissible. *See* Evid. R. 703 ("Experts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field.").

■ Next, we address Cristiani's argument that Lampton misinterpreted and misstated the testimony of Drs. Brokaw and Seligson, and additional argument that these alleged misstatements demonstrate Lampton's lack of qualification to testify regarding Money's future medical treatment and expenses. To the extent Lampton misstated the recommendations or opinions of Money's doctors, cross examination would have been the appropriate vehicle to raise and address this issue. Appellate review is not the proper avenue to challenge the veracity of a witness's testimony. We also decline to consider the extent to which Lampton's misstatements might reflect on her qualifications because at the point in her testimony where she made these alleged misstatements, her qualifications had already been determined. Any subsequent testimony would have affected the weight of her testimony. *See Brooks*, 769 N.E.2d at 702. And again, cross examination would have been the appropriate avenue (and probably the avenue with the greatest persuasive effect on the jury for Cristiani) to raise and address this issue.

In sum, Lampton was properly deemed an expert as a life care planner. Beyond that, Cristiani's challenges all target the weight that should have been given to her testimony, not its admissibility. We conclude that because her testimony presented her life care plan for Money as her expert opinion as a life care planner and based on facts set forth by Dr. Mook and others, Cristiani's challenges all fail.

## IV. Bias

Finally, Cristiani argues the trial court abused its discretion because "[l]eading up to and through the trial, a pattern developed in the [trial] [c]ourt's rulings, in which Money prevailed on virtually every substantive evidentiary objection." Appellant's Corrected Br. at 27. Cristiani describes several instances, noting that "[t]aken alone, none of these issues would merit reference.... But they—together with the [other issues on appeal]—demonstrate an uneven playing field in the proceedings...." *Id.* at 28. This amounts to an allegation of judicial bias of the trial judge.

 The law presumes a judge is unbiased. *In re Edwards*, 694 N.E.2d 701, 711 (Ind.1998). To overcome this presumption, a party must establish "actual personal bias." *Moore v. Liggins*, 685 N.E.2d 57, 63 (Ind.Ct.App.1997). Further, a party alleging judicial bias must demonstrate that "the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced the party's case." *J.M. v. M.A.*, 928 N.E.2d 230, 237 (Ind.Ct.App. 2010) (alteration and citation omitted). Adverse rulings alone are insufficient to show bias or prejudice. *Id.*; *Moore*, 685 N.E.2d at 63 ("Adverse rulings are insufficient to show bias *per se.*").

 By conceding their relative unimportance standing alone, Cristiani concedes the trial court did not abuse its discretion in any of these singular evidentiary decisions, but argues that cumulatively, each is an example of the trial judge's bias and exercise of discretion in a manner that prejudiced Cristiani.

However, Cristiani does not demonstrate an actual personal bias of the trial judge. Cristiani describes adverse rulings, but no more. There is no indication in the record and Cristiani does not present facts or specific arguments that the trial judge was motivated by any concerns other than the prevailing law in making her discretionary rulings. Accordingly, Cristiani has failed to overcome our presumption the trial judge is unbiased.

Further, Cristiani highlights less than ten incidents, which, Cristiani argues, is tantamount to a pattern. We disagree, viewing these highlighted incidents in the context of a lengthy pretrial period and jury trial, in which a trial court may have made scores of evidentiary rulings.

### Conclusion

The trial court did not abuse its discretion in denying Cristiani's motion to bifurcate the trial. Neither did the trial court abuse its discretion in denying Cristiani's request for a jury view of the bulldozer or admission into evidence of photographs of the bulldozer. Cristiani has waived the issue of whether Lampton was qualified to testify as an expert life care planner, and the weight to be given her testimony was properly conceded to the jury. Finally, Cristiani has not established actual personal bias by the trial judge, and we therefore affirm.

Affirmed.

RILEY, J., and BROWN, J., concur.