FILED

Aug 18 2016, 8:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

John B. Drummy
Mark D. Gerth
Kightlinger & Gray, LLP
Indianapolis, Indiana

Crystal G. Rowe
Whitney E. Wood
Kightlinger & Gray, LLP
New Albany, Indiana

Keith A. Gaston
Bruce D. Jones
Cruser, Mitchell & Gaston, LLC
Indianapolis, Indiana

Julie R. Murzyn
O'Neill, McFadden & Willett, LLP
Schererville, Indiana

ATTORNEYS FOR APPELLEE

Timothy S. Schafer
Timothy S. Schafer II
Todd S. Schafer
Schafer & Schafer, LLP
Merrillville, Indiana

Gregory W. Brown
Brown & Brown, P.C.
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

J.B. Hunt Transport, Inc., and
Terry L. Brown, Jr.,

*Appellants-Defendants,*

v.

The Guardianship of
Kristen Zak,

*Appellee-Plaintiff*

August 18, 2016

Court of Appeals Case No.
45A03-1506-CT-670

Appeal from the Lake Superior
Court

The Honorable Diane Kavadias
Schneider, Judge

Trial Court Cause No.
45D11-0610-CT-190

**Baker, Judge.**

In January 2006, Terry Brown was driving a semi tractor-trailer for his employer. While traveling on I-65 in snowy conditions, Brown lost control of the semi, which ended up jackknifed and disabled in the median. An hour later, a vehicle in which Kristen Zak was a passenger slid off of the same part of I-65 and crashed into Brown's semi in the median. As a result of the accident, Zak suffered permanent, serious brain damage. Her guardians filed a complaint alleging negligence on the part of Brown and his employer.

J.B. Hunt Transport, Inc. (Hunt) and Terry L. Brown, Jr. (Brown) (collectively, the appellants) appeal following a jury verdict in favor of the Guardianship of Kristen Zak (Guardianship) on Guardianship's negligence claim. The appellants raise the following arguments:

- The trial court improperly denied the appellants' motion to bifurcate the trial on the issues of liability and damages.
- The trial court improperly admitted certain evidence and excluded certain other evidence.
- The trial court erroneously gave certain jury instructions and refused to give certain other jury instructions.
- The trial court should have granted the appellants' motion for summary judgment and/or their motion for directed verdict on the issues of duty and proximate cause.
- There is insufficient evidence supporting the jury's verdict.
- The jury erroneously apportioned fault.

We find that there were multiple questions of fact that needed to be answered by a jury, and we find no basis on which to second-guess the jury's answers. We also find no questions of law warranting reversal. Therefore, we affirm.

# Facts[1]

### *The First Accident*

On January 17, 2006, Brown was a semi tractor-trailer driver employed by Hunt. He was driving an empty trailer from Greencastle, Indiana, to Bolingbrook, Illinois. At some point, it began snowing. A few miles south of mile marker 205 on I-65 North, Brown felt his trailer move from side to side. He reduced his speed to between fifty and fifty-five miles per hour but did not believe that the weather conditions were bad enough that he had to pull over.

At approximately 6:00 p.m., Brown began driving on the overpass at mile marker 205. He felt a bump in the back, looked in his rear view mirror, and saw the trailer veering to the left side of the interstate. Brown attempted to counter-steer to prevent his trailer from jack-knifing, but his efforts failed. He blacked out briefly, and when he returned to consciousness, he saw that the semi had come to rest in the median between the north and southbound lanes of I-65.[2] The vehicle was in a jackknife position, abutted the guardrail adjacent

[1] We held oral argument in Indianapolis on July 6, 2015. We thank counsel for both parties for their written and oral presentations.

[2] No other vehicles were involved in the first accident.

to the southbound lanes, and was fully contained within the median, approximately 200 to 500 feet from the overpass. Although Brown never saw any black ice on the roadway, he assumed that it was the cause of the accident.

[5]     Brown, who had a noticeable bump on his head, reported the accident to his employer and the police. An ambulance and tow truck were called to the scene. Brown did not turn on the semi's flashers or place reflective warning triangles on the roadway. At 6:05 p.m., Indiana State Police Corporal Terence Weems responded to the accident. Corporal Weems remained at the scene for approximately thirty to forty-five minutes, during which time the ambulance arrived and transported Brown to a nearby hospital.

[6]     Corporal Weems did not believe that the location of the semi in the median was a safety hazard to motorists traveling on I-65 North. The surrounding area was dark and unlit, and another officer testified that northbound drivers would likely not even have known that the tractor-trailer was in the median because they would not have been able to see it. The overpass is protected by three-foot concrete barriers on each side, and there is a berm in the median that meets the concrete wall. Together, these barriers would have prevented headlights from northbound vehicles from reflecting off of the semi. Because Corporal Weems believed the scene to be safe to passing motorists, he left before the tow truck arrived to go to the scene of another, unrelated accident.

### The Second Accident

At approximately 7:00 p.m., conditions on I-65 had worsened dramatically. Sleet, heavy snow, and ice became serious problems. Matthew Robinson was driving on I-65 North with his fiancée, Kristen Zak, as the sole passenger. Robinson lost control of his vehicle somewhere on the overpass at mile marker 205. His vehicle slid off of the roadway and spun out of control into the median, eventually striking the side of Brown's jackknifed trailer. Zak, who was thirty-one years old and asleep at the time, received the brunt of the impact and was seriously injured. She sustained serious brain damage, leaving her unable to walk, care for herself, or care for her six-year-old daughter. Neither Robinson nor Zak have any memory of the accident.

Indiana State Police Officer Martin Benner responded to the scene of the accident. Robinson twice told Officer Benner that he had been driving at the speed limit of seventy miles per hour when he lost control of the vehicle, though Robinson later told an EMT that he had been driving sixty miles per hour. Robinson has no memory of these interactions; indeed, there is a gap in his memory from before the accident to one week after the accident.

### Post-Accident Fallout

Following the accident, Hunt's claims department—as it does with all accidents—undertook a review to determine whether the first accident was preventable. To that end, Brown's supervisor completed an Injury Investigation Report, Appellants' App. p. 1398, and a Safety Event Review, *id.* at 1399.

Hunt ultimately found that the accident was preventable, and as a result of its review, Brown's employment was terminated.

### The Litigation

[10] On October 26, 2006, Guardianship filed a complaint against the appellants,[3] alleging that Brown and Hunt were negligent and that their negligence caused her injuries. Guardianship contended that Brown was directly liable and that Hunt was vicariously liable.[4]

[11] On May 29, 2008, the appellants moved for summary judgment, arguing that they did not owe a duty to Zak and that Brown's actions did not proximately cause Zak's injuries. On November 25, 2009, the trial court denied the summary judgment motion. Subsequently, the trial court supplemented its ruling, finding as a matter of law that the appellants, "as operators and owners of a motor vehicle traveling the highways of the State of Indiana," owed Zak a duty of care. Appellants' App. p. 71.

[12] Before the first scheduled trial, the appellants moved to bifurcate the issues of liability and damages. On January 12, 2011, the trial court granted the motion. On February 7, 2011, a trial on liability commenced, but it ended in a mistrial.

---

[3] Guardianship also sued Robinson, the Indiana State Police, and the Indiana Department of Transportation. Those claims have been resolved.

[4] Hunt admits that Brown was acting within the scope of his employment when the accident occurred.

[13]    Before the second scheduled trial, Guardianship filed a motion to reconsider bifurcation, arguing that the law had changed since January 12, 2011, as a result of this Court's opinion in *Dan Cristiani Excavating Co. v. Money*, 941 N.E.2d 1072, 1076 (Ind. Ct. App. 2011). On September 22, 2014, the trial court granted Guardianship's request and vacated the earlier bifurcation order. On October 27, 2014, the second trial began, but this trial also ended in a mistrial.

[14]    Before the third scheduled trial, Guardianship filed a motion in limine, seeking to exclude several pieces of evidence:

- Robinson's two admissions that he had been driving seventy miles per hour when the second accident occurred;
- The fact that Robinson's driver's license had been suspended in the past;
- The fact that Robinson had once received a speeding ticket; and
- The fact that Robinson had, in the past, been found liable for driving-related offenses.

The appellants also filed a motion in limine, seeking to exclude the following evidence:

- Hunt's review of the accident and termination of Brown's employment;
- The Indiana and Illinois Commercial Driver's License (CDL) Test Booklets as evidence of a standard of care.

The trial court denied Guardianship's motion with respect to Robinson's statements about his driving speed before the accident but granted the rest of Guardianship's requests. The trial court denied the appellants' motion to exclude the CDL Test Booklets as standard-of-care evidence. It also denied the motion to exclude reports resulting from Hunt's internal review process, finding

that these documents were not evidence of subsequent remedial measures, but it granted the appellants' motion regarding any reference to the termination of Brown's employment.

[15] A third trial began on May 4, 2015. Following Guardianship's case-in-chief, the appellants moved for a directed verdict; the trial court denied the motion. During the appellants' case-in-chief, they called Gary Thomas, a safety compliance consultant and advisor, as a witness. On cross-examination, Thomas testified that any reasonable trucking company would monitor the weather conditions in the areas where its trucks were operating and even shut down trucks if necessary. He also opined that trucking companies should communicate with and assist their drivers in making these weather-related decisions. After the close of evidence, Guardianship moved to conform its pleadings to the evidence and allow the jury to assess direct—in addition to vicarious—fault against Hunt, based on Thomas's testimony. Over objection, the trial court granted the motion.

[16] On May 20, 2015, the jury returned a verdict in favor of Guardianship, imposing an aggregate damages award of $32.5 million. The jury assessed the following apportionments of fault: (a) 30% fault to Hunt; (b) 30% fault to Brown; and (c) 40% fault to Robinson. The appellants now appeal.

# Discussion and Decision

## I. Procedural Issues

## A. Denial of Bifurcation

[17] First, the appellants argue that the trial court erred by denying their motion to bifurcate the issues of liability and damages. According to the appellants, the tragic and sympathetic nature of Zak's injuries unjustly prejudiced the appellants because it played on the sympathies of the jury as it considered the issue of liability. Thus, the appellants contend that the fair result would have been to bifurcate the two issues.

[18] To prevail on a bifurcation motion, the defendant must first convince the court that it has a persuasive argument on the issue of liability, and then prove that it will suffer actual prejudice if the trial is not bifurcated. *Dan Cristiani*, 941 N.E.2d at 1075-76. The *Cristiani* Court emphasized "the reluctance with which we reverse based on the failure to bifurcate, even if a high level of prejudice were shown, and implicitly even greater reluctance if prejudice is not as high." 941 N.E.2d at 1076-77.

[19] Here, the trial court concluded that the appellants "have not shown that they have a persuasive argument on the question of liability or that they will suffer substantial prejudice in this case." Appellants' App. p. 74. The trial court pointedly observed that, "[h]aving conducted numerous jury trials involving substantial injuries to plaintiff, this court has confidence in the ability of a jury to ably decide the separate question of liability in accordance with the court's

instructions, even when presented with a sympathetic plaintiff." *Id.* We see no error in the trial court's analysis, and given our extreme reluctance to reverse on the basis of a ruling on a motion to bifurcate, we decline to reverse for this reason.

## B. Order in Limine

Next, the appellants argue that the trial court erred by excluding certain evidence and admitting other evidence in its order in limine issued before the third trial. The decision to admit or exclude evidence is within the sound discretion of the trial court. *Weinberger v. Boyer*, 956 N.E.2d 1095, 1104 (Ind. Ct. App. 2011).

## 1. Robinson's testimony

The appellants first contend that Robinson was permitted to give "speculative character" testimony and that the testimony was confusing and/or misleading. Appellants' Br. p. 79. Specifically, Robinson testified that, based on his training as an emergency medical technician, if he had seen flashers and triangles on or near the median, he would have moved away from the danger and proceeded with caution. He also testified that he always reduces his speed if he feels that it is appropriate to do so; therefore, had there been some sort of visible warning, he would not have been driving 70 miles per hour at the time of the second accident. According to Robinson, it was "second nature" to him to slow down and change lanes if he observed warning lights or flashers on the side of the road. Tr. p. 2267. He testified that, as an ambulance driver, he had driven in

icy or snowy conditions "[t]housands" of times, *id.* at 2272, and that if he had seen flashers and reflective triangles, he would have proceeded with caution and moved away from the danger, *id.* at 2291.

[22] Indiana Rule of Evidence 404(a)(1) states that "[e]vidence of a person's character or character trait is not admissible to prove that *on a particular occasion the person acted in accordance with the character or trait.*" (Emphasis added). In this case, Guardianship was not attempting to prove that Robinson had, in fact, acted on the night of the second accident in accordance with a character or trait. Instead, Guardianship posed hypothetical questions to Robinson about what he might have done, had Brown placed warnings on the roadway, and Robinson answered those questions based on his training and experience. This testimony does not constitute character testimony as defined by Rule of Evidence 404.

[23] Guardianship contends, and the trial court agreed, that this testimony is admissible habit evidence under Rule of Evidence 406. Similar to Rule 404, Rule 406 states that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that *on a particular occasion the person or organization acted in accordance with the habit* or routine practice." (Emphasis added). Here, again, we note that by pursuing this line of questioning, Guardianship was not attempting to prove that Robinson had acted in a certain way on a particular occasion. Therefore, we do not find that this testimony constituted habit evidence as defined by Rule 406.

[24]    Indiana Rule of Evidence 401 provides that evidence is relevant if it (a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Here, one of Guardianship's theories of liability was that, if Brown had turned on the semi's flashers and placed reflective triangles on the roadway, the second accident would not have occurred. Therefore, Robinson's testimony that, based on his training and experience as an ambulance driver, he would have proceeded with caution, slowed down, and avoided the warned-of area had there been visible flashers and/or triangles, is relevant as defined by Rule 401.[5]

[25]    The appellants argue that, even if the evidence is relevant, Rule 403 provides that the evidence may be excluded if its probative value is outweighed by, among other things, confusing the issues or misleading the jury. The appellants contend that Robinson's answer to the hypothetical questions was laden with a number of assumptions: "that he was traveling in the left lane (not the right) at the time he lost control; that the right lane would have been unoccupied such that he would have immediately changed lanes . . . ; and that the ice which may or may not have caused Robinson to lose control was located only in the left travel lane of I-65 North." Reply Br. p. 25. We acknowledge the presence of

---

[5] We note that, in the context of skilled lay witnesses offering opinion testimony pursuant to Indiana Rule of Evidence 701, this Court has held that such a witness may not base the opinion on a hypothetical question. *Averitt Express, Inc. v. State*, 18 N.E.3d 608, 612-13 (Ind. Ct. App. 2014). Here, however, Robinson was not offering opinion testimony. Instead, he was answering a hypothetical question based upon his own personal knowledge and experiences. Therefore, the Rule 701 prohibition on hypothetical questions does not apply in this case.

these assumptions in Robinson's testimony. Indeed, had the appellants chosen to do so, they could have pointed out these assumptions during their cross-examination of Robinson, highlighting the issue for the jury. They elected not to pursue the line of questioning, however. Tr. p. 2325-26. We do not find that the presence of the above-listed assumptions renders the testimony overly confusing or misleading. Instead, they would potentially affect the weight to be assigned to the evidence—a task for the jury—rather than its admissibility. We decline to reverse on this basis.

## 2. Subsequent remedial measures

[26] Next, the appellants argue that the trial court erred by admitting reports generated following Hunt's review of the accident, as well as the deposition of David Rak, Brown's supervisor at the time of the accident. The appellants contend that this evidence constitutes inadmissible evidence of subsequent remedial measures, which is barred by Indiana Evidence Rule 407. They direct our attention to caselaw standing for the proposition that evidence relating to a stage in the disciplinary/termination process of an employee at fault in an accident constitutes an inadmissible remedial measure. *Strack & Van Til, Inc. v. Carter*, 803 N.E.2d 666, 671 (Ind. Ct. App. 2004).

[27] Indiana Rule of Evidence 407 states that evidence of "measures [that] are taken that would have made an earlier injury or harm less likely to occur" is inadmissible to prove negligence. In this case, the complained-of evidence is Hunt's review and investigation of the accident. Guardianship insists that an

investigation does not constitute a "measure" taken by the company. According to Guardianship, the "measure" that was taken here was Brown's termination—which was redacted from the documents before submission to the jury.

[28] Although we have been unable to find an Indiana case directly on point, other state and federal jurisdictions have addressed whether a post-incident investigation constitutes an inadmissible subsequent remedial measure. The majority of jurisdictions agree that a post-incident investigation and report of the investigation do not constitute inadmissible subsequent remedial measures. *E.g.*, *Prentiss & Carlisle Co. v. Koehring-Waterous Div. of Timberjack, Inc.*, 972 F.2d 6, 10 (1st Cir. 1992) (holding that post-accident test of allegedly defective product is not a subsequent remedial measure); *Wenger v. W. Pennsbro Twp.*, 868 A.2d 638, 644 (Pa. Commw. Ct. 2005) (holding that post-accident engineering study itself was not a remedial measure as "the whole purpose of [the] investigation was to determine whether remedial measures were warranted"); *Fox v. Kramer*, 994 P.2d 343, 352-53 (Cal. 2000) (noting with approval that majority of courts "distinguish between an investigation and actual steps taken to correct a problem; postevent investigations do not themselves constitute remedial measures, although they migh provide the basis for such measures") *Ensign v. Marion Cnty.*, 914 P.2d 5, 7-8 (Or. Ct. App. 1996) (finding that investigation done and report prepared by sheriff's board of review following a car accident was not a subsequent remedial measure). Other courts disagree. *E.g.*, *Maddox v. City of Los Angeles*, 792 F2d 1408, 1417 (9th Cir. 1986) (holding

that after a police officer used a choke hold on a suspect, subsequent internal affairs investigation was an inadmissible remedial measure); *Martel v. Mass. Bay Transp. Auth.*, 525 N.E.2d 662, 664 (Mass. 1988) (holding that post-accident investigation is a "prerequisite to any remedial safety measure" and is "inextricably bound up with the subsequent remedial measures," and was therefore inadmissible).

[29]  The Tenth Circuit Court of Appeals considered whether tests and a report prepared by a helicopter manufacturer following a helicopter accident was an inadmissible subsequent remedial measure. *Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron*, 805 F.2d 907 (10th Cir. 1986) (applying Federal Rule of Evidence 407, which is identical to Indiana Rule of Evidence 407). The *Rocky Mountain* Court found the evidence admissible, holding that

> [i]t would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports. . . . [I]t is usually sounder to recognize that such tests are conducted for the purpose of investigating the occurrence to discover what might have gone wrong or right. Remedial measures are those *actions taken to remedy* any flaws or failures indicated by the test.

*Id.* at 918 (emphasis added). Adding to this analysis, which we find to be sound, is the Supreme Court of Alaska, which considered whether a post-accident report was admissible. *City of Bethel v. Peters*, 97 P.3d 822 (Alaska 2004). Finding that the investigation and report on the investigation did not constitute subsequent remedial measures, the Alaska Court reasoned as follows:

Rule 407 prohibits evidence of "measures" that have been "taken." We take "measures" to mean concrete actions, and to leave outside the rule's prohibition preliminary investigations and recommendations pointing toward those actions. Even if post-accident investigations and reports were considered "measures," the rule would not reach them. The rule excludes "subsequent measures" that would have reduced the likelihood of the accident if they had been "taken previously," meaning before the accident. "One cannot investigate an accident before it occurs, so an investigation and report . . . cannot be a measure that is excluded." The language of Rule 407 and the general presumption of admissibility laid down by Rule 402, along with persuasive authority from other courts, compel us to hold that evidence of post-accident investigations and recommendations are not automatically excluded as subsequent remedial measures.

*Id.* (quoting *Ensign*, 914 P.2d at 7) (other internal citations and footnotes omitted). We find this analysis to be compelling, and agree that evidence of post-accident investigations are not automatically excluded as subsequent remedial measures. Therefore, in this case, the trial court did not err by admitting Hunt's post-accident reports or Rak's deposition.

## 3. Indiana State Police

[30] Finally, the appellants argue that the trial court should have admitted evidence that the Indiana State Police did not direct Brown to activate flashers or place reflective triangles near the jackknifed semi. They contend that this evidence was relevant to show what a reasonably prudent person under similar circumstances would have done following the accident.

[31] Here, Indiana State Police (ISP) was originally named a defendant in this case but was dismissed after summary judgment was granted in its favor. It was reasonable for the trial court to have found that, by seeking to introduce evidence that Corporal Weems did not direct Brown to activate flashers or place reflective triangles on the roadway, the appellants sought to imply fault on the part of ISP, which was no longer a party to the case. Indeed, after ISP's motion for summary judgment—to which the appellants did not object—was granted, the appellants did not seek to have ISP named as a non-party. Had the appellants wished to include ISP as a party or non-party for the purpose of allocation of fault, they should have filed a motion to that effect or in some way indicated a wish to have ISP remain for the purpose of allocation of fault. *See Bloemker v. Detroit Diesel Corp.*, 687 N.E.2d 358, 359-60 (Ind. 1997) (holding that if co-defendant is dismissed at summary judgment, defendant may not assert statutory nonparty defense unless defendant objected to the dismissal or otherwise asserted any claim that the other party should remain for purposes of allocation of fault).

[32] Because the appellants did not preserve the right to include ISP as a non-party, the trial court could have concluded that to inject a possible question of fault on the part of the ISP would have confused and misled the jury. As we give our trial courts considerable leeway in conducting the required balancing under Rule 403, *e.g., Anderson v. State*, 681 N.E.2d 703, 706 (Ind. 1997), we are compelled by our standard of review to affirm this decision.

# II. Substantive Issues

## A. Jury Instructions

[33] Jury instructions are generally left to the sound judgment of the trial court. *Franciose v. Jones*, 907 N.E.2d 139, 151 (Ind. Ct. App. 2009). In reviewing a trial court's decision to give or refuse an instruction, we consider whether the instruction correctly states the law, is supported by the record, and is substantively covered by other instructions. *Id.* When seeking a new trial on the basis of an improper jury instruction, a party must show a reasonable probability that her substantial rights have been adversely affected. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 944 (Ind. 2001).

## 1. Giving of Instructions 15 and 32

[34] The appellants contend that the trial court erred by giving Final Instructions 15 and 32 and by supplying the jury with an incorrect verdict form permitting it to assess independent and vicarious fault against Hunt. Final Instruction 15 provides as follows:

> The defendants agree that [Brown] was an agent of [Hunt] and acting within the scope of his authority at all times relevant to this lawsuit.
>
> If [Brown] wrongfully acted or failed to act, both [Hunt] and [Brown] are liable for that action or inaction.
>
> If you decide that [Brown] is liable, then you must decide that [Hunt] is liable. However, if you decide that [Brown] is not

liable, then you must also decide that [Hunt] is not liable, *unless you find separate and independent liability on behalf of [Hunt].*

Appellants' App. p. 97 (emphasis added).  Final Instruction 32 reads:

To decide if [Zak] is entitled to recover damages from [Hunt],

[Brown], or [Robinson], and if so, the amount of those damages, apportion the fault of the defendants on a percentage basis. Do this as follows:

First, if [Hunt], [Brown], and [Robinson], are not at fault, return your verdict for the defendants and against [Zak]; and deliberate no further. (Use Verdict Form A).

If [Hunt], [Brown], or [Robinson] are at fault, decide each defendants' [sic] percentages of fault that caused [Zak's] injuries. These percentages must total 100 percent. Do not apportion fault to any other person or entity. (Use Verdict Form B).

After you decide each defendant's percentage of fault that caused [Zak's] injuries, do the following:

(1) Decide the total amount of [Zak's] damages, if any. Do not consider fault when you decide this amount.

(2) *Multiply [Zak's] total damages by each [Hunt], [Brown], and [Robinson's] percentage of fault*.

(3) Return your verdict for [Zak] and against each defendant in the amount of the product of that multiplication.

*Id.* at 68 (emphasis added).

[35] Although they have framed their argument as one that relates to jury instructions, in truth, the appellants are arguing that the trial court improperly permitted Guardianship to conform its pleadings to the evidence at the close of the trial and assert an independent claim against Hunt for its alleged failures to monitor the weather before 6:00 p.m., direct Brown to shut down his semi before it reached the overpass, and communicate with Brown after the accident, instructing him to activate his flashers and set out reflective triangles.

[36] Indiana Evidence Rule 15(B) states that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment . . . ." Here, it was the appellants' own expert who testified that any reasonable trucking company would make an "independent analysis" of the weather, and make an "independent decision" as to whether it was safe for its trucks to operate in the area. Tr. p. 2746. In Thomas's opinion, the decision to keep driving in poor conditions is "not all on the driver . . . . The trucking company should assist the driver." *Id.* at 2747. The trial court did not err by concluding, based on the appellants' expert's testimony, that the issue of Hunt's *direct* liability had been brought into the litigation. Therefore, the trial court did not err by finding that this evidence created a separate, independent claim against Hunt and by permitting the pleadings to conform to that evidence.

[37]   Because the trial court did not err by allowing the pleadings to conform to the evidence, it did not err by giving Jury Instructions 15 and 32. Similarly, as for the verdict form, which listed Hunt and Brown separately, it is well established that a "trial court [is] required by statute to furnish a jury verdict form capable of showing the percentage of fault, if any, attributable to each defendant." *Indian Trucking v. Harber*, 752 N.E.2d 168, 177 (Ind. Ct. App. 2001). This verdict form did not permit Guardianship to recover twice against Hunt; instead, it recovered against Brown (for which Hunt is vicariously liable, but it was *Brown's* negligence for which damages were awarded) and against Hunt (for its own independent negligence). Consequently, we find no error in Jury Instructions 15 or 32 or in the verdict form.

## 2.  Giving of Instruction 22

[38]   Next, the appellants argue that the trial court erred by giving Final Instruction 22, which provided as follows:

> When the events in this case happened, [FMCS] Regulation § 392.14 provided as follows: "Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated. Whenever compliance with the foregoing provisions of this rule increases hazard to passengers, the commercial motor vehicle may be operated to the nearest point at which the safety of passengers is assured."

Also, when the events in this case happened, Indiana Code § 9-21-8-2 provided as follows: "Except, when passing a slower vehicle, entering or leaving a highway, or where a special hazard exists that requires, for safety reasons, the use of an alternate lane, a person may not operate a truck, truck tractor, trailer, semitrailer, or pole trailer on an interstate highway in any lane except the far right lane."

*If you decide from the greater weight of the evidence that [Brown] violated [FMCS] Regulation § 392.14 or Indiana Code § 9-21-8-12, and that the violation was not excused, then you must decide that they were negligent.*

The above statutes do not apply to [Robinson] because he was not operating a commercial motor vehicle.

Appellants' App. p. 104 (emphasis added).

[39] The appellants argue that this instruction is misleading, "as it fails to take into account that there were two distinct accidents—separated by one hour—and that Brown's failure (if any) to comply with the above-cited statute and regulation . . . did not proximately cause Robinson to lose control of his vehicle and injure Zak in the second accident." Appellants' Br. p. 73. According to the appellants, whether they engaged in negligence per se by violating the above statutes is irrelevant because violation of a statutory duty is not actionable negligence unless it was a proximate cause of the plaintiff's injuries.

[40] It is well established that jury instructions are to be read as a whole. *E.g.*, *Underwood v. Gale Tschuor Co.*, 799 N.E.2d 1122, 1128 (Ind. Ct. App. 2003) ("in determining whether the jury was properly instructed, we must read all of the

jury instructions together and construe the instructions as a whole"). Other jury instructions clearly informed the jury of the causation requirement and of the elements—including causation—that Guardianship had the burden to prove. Appellants' App. p. 86, 107, 109, 110. Therefore, we find no error in the trial court's decision to give Instruction 22.

## 3. Refusal of Tendered Instructions 26 and 27

[41] Next, the appellants argue that the trial court erroneously refused to give their Tendered Instructions 26 and 27. Tendered Instruction 26 states:

> In absence of notice to the contrary, Defendants [Hunt] and [Brown] had a right to assume that Co-Defendant [Robinson] would use reasonable care in driving on the highway, and Defendants [Hunt] and [Brown] had no duty to anticipate negligent acts on the part of Co-Defendant [Robinson].

*Id.* at 159. Tendered Instruction 27 provides:

> The Defendants, [Brown] and [Hunt], did not owe a duty to [Robinson] or [Zak] to warn them that I-65 and the overpass located near the scene of the accident were in an unsafe condition due to the accumulation of ice and snow because the Defendants did not have any control over the highway or overpass.

*Id.* at 162.

[42] According to the appellants, these instructions are correct statements of law, supported by the record, and not covered by other instructions. The appellants insist that throughout the trial, Guardianship maintained that Brown should

have anticipated that another motorist would have encountered the same ice. They argue that Brown had no duty to anticipate Robinson's negligent acts.

[43] As for tendered Instruction 26, its substance was covered by Final Instruction 18, which states: "Unless a person using a road has notice to the contrary, that person is entitled to assume that others using the road will use reasonable care." Appellants' App. p. 100. Therefore, it was not error to decline to give tendered Instruction 26.

[44] As for tendered Instruction 27, the trial court did not err by finding that it was confusing, misleading, and not supported by the evidence. Guardianship did not, in fact, maintain that the appellants had a duty to warn motorists of the icy bridge. Instead, the primary claim was that any reasonable truck driver would have slowed his speed while driving in poor conditions and warned "of his white truck in the median of a major highway, at night, during a snow storm after he himself lost control and crashed into the median." Appellee's Br. p. 51 (emphasis omitted). Therefore, this tendered instruction was not supported by the record and the trial court did not err in declining it.

## B. Denial of Summary Judgment/Directed Verdict

### 1. Standard of Review

[45] Next, the appellants argue that the trial court should have granted their motion for summary judgment and motion for directed verdict because Guardianship failed to establish duty or proximate cause as a matter of law. Summary judgment is proper where no genuine issue of material fact remains and the

movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). A directed verdict—also known as a judgment on the evidence—is proper where all or some of the issues are not supported by sufficient evidence. Ind. Trial Rule 50(A).

[46] To prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach. *E.g.*, *Florio v. Tilley*, 875 N.E.2d 253, 255 (Ind. Ct. App. 2007). Summary judgment is rarely appropriate in negligence cases. *Id.* Issues of negligence, contributory negligence, causation, and reasonable care are generally more appropriately left for the determination of a trier of fact. *Id.* at 256. In this case, the appellants argue that the trial court should have granted summary judgment based on the elements of duty and causation.

## 2. Duty

[47] It is well established that "[t]he duty to exercise care for the safety of another arises as a matter of law out of some relationship existing between the parties[.]" *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1261 (Ind. Ct. App. 1989). While duty is generally a question of law, "factual questions may be interwoven with the determination of the existence of a relation, rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder." *Id.* at 1261-62.

[48] The duty alleged to be owed by the appellants to Zak is the general duty to use ordinary care to avoid injuries to other motorists. *Romero v. Brady*, 5 N.E.2d 1166, 1168 (Ind. Ct. App. 2014), *trans. denied*. The appellants concede that this duty was owed by Brown to other motorists, but deny that Zak was another motorist at the time Brown's accident occurred, given that her vehicle was still an hour away at that time. According to the appellants, while an operator of a motor vehicle owes a duty to others using a common highway simultaneously, in this case, Brown and Zak were never using the roadway simultaneously.

[49] We disagree that so clear a line can be drawn as a matter of law. *See, e.g.*, *Ind. Limestone Co. v. Staggs*, 672 N.E.2d 1377, 1380-84 (Ind. Ct. App. 1996) (finding a question of fact regarding duty of landowner to driver where driver lost control of vehicle, left roadway, and drove into a decades-old quarry located twenty-five feet from the highway); *Smith v. Armor Plus Co.*, 617 N.E.2d 1346, 1352 (Ill. App. Ct. 1993) (finding a question of fact regarding duty where truck had been abandoned on shoulder of highway for hours when another vehicle collided with it). The appellants would have us draw a line, but we question, where should it be drawn? What proximity is "close enough" or "simultaneous enough" for a duty to be imposed as a matter of law—within visible sight of the driver? Five minutes away? Ten? Thirty? We believe that this issue is heavily laden with factual questions that must be answered by a jury. Therefore, we believe that the trial court did not err by denying summary judgment and directed verdict on this issue.

# 3. Proximate Cause

As noted above, the question of proximate cause is generally left to the factfinder. *Rhodes v. Wright*, 805 N.E.2d 382, 388 (Ind. 2004). This tends to be the case because the question of causation often requires a weighing of disputed facts. *Smith v. Beaty*, 639 N.E.2d 1029, 1035 (Ind. Ct. App. 1994). It is well established that an injury may have more than one proximate cause. *Hellums v. Raber*, 853 N.E.2d 143, 146 (Ind. Ct. App. 2006). In determining whether an act is a proximate cause of an injury, we consider whether the injury was a natural and probable consequence of the negligent act, which, in light of attending circumstances, could have been reasonably foreseen. *Collins v. J.A. House, Inc.*, 705 N.E.2d 568, 573 (Ind. Ct. App. 1999). In other words, "[w]hether or not proximate cause exists is primarily a question of foreseeability." *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 108 (Ind. 2002).

The appellants insist that even if their actions were negligent, those actions did not set into motion any chain of circumstances that contributed to or caused the second accident and Zak's injuries. The conduct highlighted by Guardianship as negligent includes the following: Hunt's failure to shut down its trucks due to the poor weather conditions; Brown driving too fast for weather conditions and in the wrong lane; Brown's failure to keep a proper lookout and to avoid the first accident; after the accident, Brown's failure to activate the emergency flashers or set out reflective triangles; Hunt's failure to contact Brown and direct

him to turn on his flashers and set out triangles; and, Hunt's failure to have other drivers stop at the scene to turn on the flashers and set out triangles.

[52] It is well established that there may be more than one proximate cause of a plaintiff's injuries. *E.g.*, *Hellums*, 853 N.E.2d at 146. And indeed, in this case, the jury implicitly found as much by assigning 40% of the fault to Robinson. To resolve this case as a matter of law, however, we must find that under no circumstances could more than 0% of the fault be assigned to Hunt and Brown.

[53] More specifically, to resolve proximate cause as a matter of law, we must find that "only a single conclusion can be drawn from the facts." *Florio*, 875 N.E.2d at 256. In this case, we cannot make such a finding. While it may be true that the presence of the semi in the median did not cause Robinson to lose control of his vehicle, there is certainly a question of fact as to whether the presence of the semi in the median caused Zak's injuries. Hunt's own litigation director testified that having a semi disabled "[a]ny place off of the roadway is not a safe place[.]" Griffin Dep. p. 73. Zak's treating neurologist testified that her brain injury was caused by the sudden impact with the 29,000-pound immovable semi; we agree with Guardianship that this testimony creates a question of fact as to whether Brown's actions caused or contributed to the severity of Zak's injuries.

[54] Furthermore, if Brown's negligence caused the first accident, a reasonable factfinder could conclude that it would be foreseeable that another vehicle would slide off the road in the same spot and strike the semi. This Court has

addressed a similar issue previously and found that the jury must answer such questions:

> Where, as here, the actor's conduct has created a situation which without more is not dangerous to anyone but which may become dangerous if subsequently acted upon by a human being or force of nature, the reasonableness of the actor's conduct must be evaluated, ultimately by weighing the likelihood and potential for harm against the utility of the actor's conduct. Whether the risk involved in doing a particular act is apparent to an ordinarily prudent person is most appropriately left for a jury which can bring to bear its varied experience and common knowledge.

*Harper*, 533 N.E.2d at 1265 (internal citations omitted). Ultimately, while the second accident may seem to be considerably attenuated from the first, we cannot say as a matter of law that the appellants' actions and omissions played no role whatsoever in proximately causing Zak's injuries. These issues needed to be evaluated by a jury. Therefore, we find that the trial court did not err by denying summary judgment and directed verdict.

## C. Sufficiency of Evidence

[55]     The appellants also argue that there is insufficient evidence supporting the jury's verdict in favor of Guardianship. In the appellate review of a claim of insufficient evidence in a civil case, we affirm when, considering the probative evidence and reasonable inferences, a reasonable jury could have arrived at the same determination. *TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201, 209 (Ind. 2010). We will consider only the evidence and inferences most favorable to the judgment in conducting our review. *Id.* As noted above, to prevail on its

negligence claim, Guardianship was required to prove a duty owed by the appellants to Zak; a breach of that duty; and an injury to Zak proximately caused by that breach. *E.g.*, *Kroger Co. v. Plonski*, 930 N.E.2d 1, 6 (Ind. 2010).

[56] With respect to duty, Guardianship offered evidence that, within an hour of Brown's crash, Zak's vehicle traversed the same stretch of I-65. And at the time Robinson lost control of his vehicle, Brown's semi was jackknifed in the median. We find that a reasonable jury could have determined, based on this evidence, that Brown—and Hunt—owed a duty of care to Zak under these circumstances.

[57] With respect to breach, Guardianship offered the following evidence:

- Brown was driving too fast for the weather conditions.
- Brown was driving in the left lane of the interstate, in violation of Hunt's policies and procedures as well as Indiana Code section 9-21-8-12.
- Hunt failed to direct its drivers to shut down their trucks because of the weather.
- After the accident, Brown did not activate the semi's flashers or place reflective triangles on the roadway. Hunt failed to direct him to do the same.
- Hunt's own witnesses testified that Brown was driving too fast and that, by failing to activate flashers and place triangles on the roadway, he failed to comply with Hunt's policies and procedures.

We find that a reasonable jury could have determined, based on this evidence, that Brown and Hunt breached their duty of ordinary care owed to Zak.

[58] With respect to proximate cause, Robinson testified that if he had seen flashers or warning triangles, he would have slowed his speed and moved into the right-

hand lane of travel. Whether that testimony is credible was for the jury to determine, and we will not second-guess the jury's assessment on appeal. As noted above, Zak's neurologist testified that her severe injuries were caused by her vehicle colliding with a stationary semi. Whether the placement of the semi in the median was a proximate cause of her injuries was for the jury to determine. We find that a reasonable jury could have determined, based on this evidence, that the negligent actions of Brown and Hunt proximately caused the injuries sustained by Zak. In sum, given our standard of review, we decline to reverse the jury's verdict based upon insufficient evidence.

## D. Apportionment of Fault

[59] Finally, the appellants argue that the jury's comparative fault apportionment was against the weight of the evidence. The apportionment of fault is uniquely a question of fact to be decided by the factfinder. *St. Mary's Med. Ctr. of Evansville, Inc. v. Loomis*, 783 N.E.2d 274, 285 (Ind. Ct. App. 2002). The only point at which it becomes an issue of law is when there is no dispute in the evidence and there is only one logical conclusion. *Id.*

[60] Here, the jury apportioned 30% fault to Brown, 30% fault to Hunt (independently), and 40% fault to Robinson. The appellants argue that because the second accident would not have occurred if Robinson had remained in control of his vehicle, this apportionment of fault is erroneous. But the evidence also supports the jury's conclusion that, had Brown not been driving negligently, the first accident would not have occurred, and the semi—which

caused Zak's severe brain injury—would not have been in the median at the time of the second accident. In other words, this argument requires us to reweigh the evidence, which we may not do in considering apportionment. *Dennerline v. Atterholt*, 886 N.E.2d 582, 598 (Ind. Ct. App. 2008). There is simply no basis on which we can reverse the jury's apportionment of fault in this case, and we decline to do so.

[61] The judgment of the trial court is affirmed.

May, J., and Brown, J., concur.