## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2018, 9:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Harold E. Amstutz
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of:

C.Y. (Minor Child)

and

R.Y. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 18, 2018

Court of Appeals Case No.
18A-JT-1892

Appeal from the Tippecanoe
Superior Court

The Honorable Faith A. Graham,
Judge

Trial Court Cause No.
79D03-1710-JT-106

**Bailey, Judge.**

# Case Summary

[1] R.Y. ("Father") appeals the trial court's judgment terminating his parental rights to C.Y. ("Child"). He raises one issue on appeal which we restate as whether the trial court clearly erred when it terminated his parental rights.

[2] We affirm.

# Facts and Procedural History

[3] Father and S.L. ("Mother")[1] are the parents of Child, who was born on January 9, 2017. At the time of Child's birth, Child tested positive for morphine because of Mother's drug use. Mother tested positive for opiates and admitted to using opiates before delivery of Child. On January 25, 2015, the Indiana Department of Child Services ("DCS") filed a petition alleging Child was a Child in Need of Services ("CHINS"). The petition noted that another CHINS action was pending as to Mother and Father's other, older children. On January 26, 2017, Father had a drug screen that was positive for heroin. On February 1, the trial court issued a detention hearing order in which it ordered

---

[1] Mother does not actively participate in this appeal.

that Child be removed from his parents and placed in foster care. Child has remained in foster care since that date.

[4] On March 23, 2017, the trial court heard evidence and found Child to be a CHINS due to the Mother's and Father's continued drug use. The court noted that Father had admitted to relapsing into drug use on March 6, 2017. On April 13, the court issued a Parental Participation Decree in which it ordered, among other things, that Father cease illegal drug use, submit to random drug screens, and participate in an Intensive Out Patient ("IOP") program and Life in the Balance ("LIB") program and follow all recommendations to address heroin use.

[5] Father participated in the LIB substance abuse treatment program with therapist John Catron ("Catron") of Bauer Family Resources from April 4, 2017, until September 8, 2017. Most of Father's drug screens during this period of time were positive for drug use. Father was unsuccessfully discharged due to his repeated absences from the program. At the time of discharge, Father's drug screens were still positive, and Catron recommended that Father participate in a residential drug treatment program.

[6] During the pendency of the CHINS case, Father rarely submitted to drug screenings as ordered and, when he did, he often tested positive for illegal drug use. One of Father's most recent drug screens was on August 22, 2017, and was positive for Fentanyl and buprenorphine. Fentanyl can be absorbed by a child who has skin contact with a Fentanyl user. Therefore, the court

suspended Father's parenting time until such time as Father submitted to a drug screen "free from methamphetamine and fentanyl." Ex. Vol. I at 88. However, Father refused to appear for any further drug screens after August 2017[2], and he did not participate in any further services.

[7] On August 8, 2017, DCS filed petitions to terminate Mother's and Father's rights as to their other, older children, and an evidentiary hearing was held on that petition on October 16, 2017. Following that hearing, Father submitted to a drug screen which was positive for illegal drugs. The trial court terminated Father's parental rights to his other, older children on January 19, 2018, and that order was affirmed on appeal.

[8] On October 16, 2017, the court changed Child's permanency plan to adoption and again ordered Father to complete all previously ordered services, submit to random drug screens, and maintain stable housing and employment. On that same date, DCS filed a petition to terminate Mother's and Father's parental rights to Child. On January 9, 2018, and March 14, 2018, the trial court held an evidentiary hearing on the termination petition. At the hearing, Father testified that he had not used heroin for the last three or four months and that he had been in substance abuse treatment for the last two months. Father did not have further proof that he was participating in substance abuse treatment and he refused to provide DCS with a release form so that it could obtain

---

[2] The one exception was after the permanency hearing on October 16, 2017, at which time Father again tested positive for illegal drugs.

information from the substance abuse treatment provider. Father testified that he had passed drug screens but did not provide other evidence of those drug screens.

[9] At the hearing, Family Case Manager Samantha Goltz ("FCM Goltz") testified that Father's last drug screenings were positive for heroin and fentanyl use, and she stated that she was concerned about Father's drug use and mental health. FCM Goltz testified that Father is aggressive when he uses drugs, and she recommended that his parental rights be terminated. Court-Appointed Special Advocate Leigh Ann Fricke ("CASA Fricke") testified that a relative of Child's current foster parents wished to adopt Child, and she felt that termination of Father's parental rights and adoption of Child was in Child's best interests. CASA Fricke testified that she believed that the services DCS had offered to Father were appropriate, but he failed to participate in them as ordered.

[10] In an order dated June 28, 2018, the trial court granted the termination petition and, in support, stated in pertinent part:

FINDINGS OF FACT

\* \* \*

13. Both parents have extensive histories of substance abuse. Prior to the trial home visit in the first CHINS case, the parents were actively engaged in services, maintaining housing and employment, maintaining sobriety, and participating in increased parenting time. However, neither parent was able to maintain progress and remain drug free.

* * *

15.    Father's last employment was March/April 2017 at Thyssen-Krupp where he worked for about four (4) to five (5) months at seventy (70) hours per week.  At the time of the termination hearing, both Mother and Father were unemployed.

* * *

18.    Father has struggled with an opioid addiction for the past eighteen (18) years.  Father completed a substance abuse evaluation and treatment at Wabash Valley Alliance.  Father completed recommended intensive outpatient (IOP) treatment.  Following IOP, Father attended a few individual sessions and concluded substance abuse services on September 21, 2016.  Father commenced additional intensive outpatient (IOP) treatment beginning April 2017 at Bauer Family Services.  Father was unsuccessfully discharged on September 8, 2017 due to lack of attendance at group therapy.  Father otherwise failed to continue substance abuse treatment.  Father failed to participate in recommended therapy to address mental health issues.  Father was unsuccessfully discharged from case management services.

19. During both CHINS cases, Father tested positive for the presence of drugs on October 30, 2015 (alprazolam/codeine/hydrormorphone/morphine/heroin), November 9, 2015 (methadone/morphine/heroin/cocaine/fentanyl), November 30, 2015 (morphine/heroin), December 11, 2015 (morphine/heroin), December 15, 2015 (morphine/heroin), January 22, 2016 (alprazolam), May 31, 2016 (morphine/heroin), January 26, 2017 (morphine/heroin), January 27, 2017 (morphine/heroin), February 1, 2017 (morphine/heroin), February 8, 2017 (morphine/heroin), February 22, 2017 (buprenorphine), March 3, 2017 (morphine/heroin), March 6, 2017 (morphine/heroin),

March 7, 2017 (morphine/heroin), March 24, 2017 (methadone), March 29, 2017 (methadone/morphine/heroin), April 11, 2017 (alcohol/morphine/heroin), April 19, 2017 (alcohol/morphine/heroin), August 10, 2017 (morphine/heroin), August 14, 2017 (morphine/heroin), August 17, 2017 (morphine/heroin/fentanyl), August 18, 2017 (morphine/heroin/fentanyl), August 22, 2017 (buprenorphine/fentanyl), and August 27,2017 (buprenorphine/heroin/fentanyl). Father admitted in October 2017 that both parents were shooting heroin. Father failed to submit to multiple drug screens as requested.

* * *

22. After the trial home visit disrupted, Father only attended parenting time for less than three (3) weeks, a total of six (6) scheduled visits. Although Father's interactions with the children were generally appropriate at those visits, he nodded off several times even while holding [Child]. The referral required that both parents attend all visits. Father never engaged in any further parenting time. Both Mother and Father last saw the children in August 2017.

23. CASA Staff Advocate, Leigh Ann Fricke, supports termination of parental rights [as being] in the best interests of the child. The child is very bonded with the current foster parents. The plan for the child is adoption. The child is receiving therapy to address developmental delays in leg and core strength. The child is adoptable even if the prospective foster parents are unable to adopt for any reason. Parents have failed to demonstrate sobriety or stability necessary to parent the child[.]

24. The stability of the parents has deteriorated since the cessation of the trial home visit. Father admits he is currently not financially able to provide for the children. The parents failed to

maintain contact with DCS since August 2017. The parents failed to complete individual counseling and home-based case management. The parents provided no verification of current therapy or treatment. The parents lack stable, independent housing and are unemployed. Both parents continue active drug use[,] most recently testing positive for fentanyl which can be transferred to the children by skin to skin contact.

CONLUSIONS OF LAW

1. There is a reasonable probability the conditions that resulted in removal of the child from the care of the parents or the reasons for continued placement outside the home will not be remedied. Neither Mother nor Father has demonstrated the ability or willingness to make lasting changes from past behaviors. There is no reasonable probability that either Mother or Father will be able to maintain sobriety and stability to care and provide adequately for the child.

2. Continuation of the parent-child relationship poses a threat to the well-being of the child. The child needs stability in life. The child needs parents with whom the child can form a permanent and lasting bond to provide for the child's emotional and psychological[,] as well as physical[,] well-being. The child's well-being would be threatened by keeping the child in parent-child relationships with Mother or Father whose own choices and actions have made them unable to meet the needs of the child.

3. DCS has a satisfactory plan of adoption for the care and treatment of the child following termination of parental rights. The child can be adopted and there is reason to believe an appropriate permanent home has or can be found for the child.

4. For the foregoing reasons, it is in the best interests of [Child] that the parental rights of [Mother] and [Father] be terminated.

App. at 13-15. This appeal ensued.

# Discussion and Decision

## Standard of Review

Father maintains that the trial court's order terminating his parental rights was clearly erroneous. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Office of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

(A) that one (1) of the following is true:

> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.

* * *

(C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2). DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. *Id.* DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[13]     When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Office of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Office of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[14]     Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[15]     Father does not specifically challenge any of the trial court's relevant findings of fact. Rather, he contends that the trial court failed to give enough emphasis to the positive steps Father has taken, failed to adequately take into account the "unique nature of an opioid addiction," failed to consider that DCS did not

offer him appropriate services, and failed to grant him sufficient time to overcome his opioid addiction. Appellant's Br. at 12-13. Although it is unclear from his brief, it appears that Father challenges the trial court's conclusions that Father will not remedy the conditions that resulted in the child's removal, that the continuation of the parent-child relationship poses a threat to the well-being of the child, and that termination is in the best interests of the child. Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we only address whether the trial court erred in concluding that Father is not likely to remedy the conditions that resulted in Child's removal and that termination is in Child's best interest.

## Conditions that Resulted in Child's Removal

[16] Father seems to maintain that the trial court erred in finding a reasonable probability that the conditions that resulted in Child's removal will not be remedied. In determining whether the evidence supports the trial court's finding that Father was unlikely to remedy the reasons for removal, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs.* (*In re E.M.*), 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for his or her children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future

neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[17] Child was originally removed from Father under a CHINS action, and was subsequently found to be a CHINS, due to Father's illegal drug use. And it is undisputed that, at the time of the termination hearings on January 9, 2018, and March 14: Father had not consistently submitted to drug screens; usually tested positive for illegal drugs when he did submit to drug screens; was unsuccessfully discharged from IOP/LIB drug treatment for repeated absences; had his parenting rights suspended in August 2017 until such time as he could pass a drug screen free of fentanyl which could spread to Child through touch; ceased all contact with Child and all communication and cooperation with DCS beginning in August 2017; failed a drug screening on October 16—the day the termination petition was filed; and refused to provide DCS with release forms so that it could verify his alleged recent substance abuse treatment and negative drug screens. Given Father's habitual and continuing patterns of drug use, his failure to continue cooperation with DCS, and his refusal to provide DCS with the means of verifying his alleged recent treatment and sobriety, we cannot say

that the trial court erred in concluding that the conditions at the time of Child's removal were not, and likely will not be, remedied. Father's contentions to the contrary are simply requests that we reweigh the evidence, which we cannot do. *In re D.D.*, 804 N.E.2d at 265.

[18] However, Father asserts that the services DCS offered to him were not "appropriate" because they were "abstinence-based programs" such as IOP/LIB. Father maintains that DCS instead should have offered and provided to him "medically assisted treatment," which he states would have been more likely to help him overcome his drug addiction. But, as this court has previously held, if a "parent feels the services ordered by the court are inadequate to facilitate the changes required for reunification, then the onus is on the parent to request additional assistance from the court or DCS." *Prince v. Dep't of Child Servs.*, 861 N.E.2d 1223, 1231 (Ind. Ct. App. 2007). This is because

> [f]rom one parent to the next, the DCS and trial court have no way to know whether addictions treatment is failing because the treatment is not the most appropriate for the parent or because the parent simply does not care enough about reunification to maintain sobriety under any form of treatment. Accordingly, we will not place a burden on either the DCS or the trial court to monitor treatment and to continually modify the requirements for drug and alcohol treatment until a parent achieves sobriety. Rather, the responsibility to make positive changes will stay where it must, on the parent.

*Id.* There is no evidence that Father ever informed DCS or the trial court that the IOP/LIB treatment was insufficient or that he needed medically assisted treatment instead. And Father presented no evidence to the trial court that medically assisted treatment would have helped him maintain sobriety.

[19] Father also contends that DCS should have given him additional time in which to overcome his opioid addiction, given the current nation-wide opioid crisis and the nature of an opioid addiction. In support, he refers to various newspaper and magazine articles that were not filed with the trial court below. Such documents are outside the appellate record and cannot be used to support an appellant's arguments on appeal.[3] *See Hoosier Outdoor Advertising Corp. v. RBL Mgmt., Inc.*, 844 N.E.2d 157, 161 (Ind. Ct. App. 2006), *trans. denied.* Moreover, our legislature has determined that parents need only be given a period of time not exceeding twenty-two months in which to remedy the reasons for the child's removal. I.C. § 31-35-2-4(b)(2)(A)(iii) (providing a statutory basis for TPR where the children had been removed from the parents for at least fifteen of the most recent twenty-two months). Father's policy argument that persons addicted to opioids should be given more time to overcome their addictions must be directed to the legislature, not the courts. *See, e.g.*, *State v. Int'l Business Machines Corp.*, 964 N.E.2d 206, 210 (Ind. 2012) ("[P]rovided the result is

---

[3] We also note that "[n]ewspaper articles are, by their very nature, hearsay and for that reason are seldom proper evidence to prove any fact except the bare fact of their publication." *Moore v. Liggins*, 685 N.E.2d 57, 65 (Ind. Ct. App. 1997).

constitutional, choices of policy are solely within the purview of the Legislature.").

# Best Interests

[20] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224. Such evidence, "in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests." *L.S. v. Ind. Dep't of Child Servs. (In re A.D.S.)*, 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied*.

[21] Again, Father's contentions on this issue amount to requests that we reweigh the evidence, which we will not do. The evidence most favorable to the judgment shows that, despite entering drug treatment for a period of time, Father continued to use illegal drugs and did not successfully complete

treatment. Father also ceased any cooperation or even contact with DCS from August 2017 up to the time of the termination hearing. And both the FCM and the CASA testified that they believed termination of Father's parental rights was in Child's best interests. Given that testimony, in addition to evidence that Child needs permanency and stability that Father cannot provide[4] and that the reasons for Child's removal from Father will not likely be remedied, we hold that the totality of the evidence supports the trial court's conclusion that termination is in Child's best interests. The trial court did not err when it terminated Father's parental rights to Child.

Affirmed.

Bradford, J., and Brown, J., concur.

---

[4] Father blames DCS for the loss of his subsidized housing and job. However, even if Father had housing and employment at the time of the termination hearing, the evidence would still support the termination due to his on-going drug use and cessation of cooperation with DCS.